## Robert Pine and Sylvanus Pine *against* James Vanuxem.
## Same *against* Henry Pratt and Abraham Kintzing.

Misrepresentation to effect a policy of insurance, is not to be presumed.
What concealment of circumstances will vitiate a policy.

SUITS on a policy of insurance, on goods in the sloop Sally, William Seabury master, beginning at and immediately from her loading, from Philadelphia to New York. Vanuxem subscribed 600 dollars, and Pratt and Kintzing 769 dollars on the 11th August 1797, at a premium of $1\frac{1}{2}$ per cent. There was a clause in the policy that Indian corn should be free from average.

The two causes were tried together by the same jury.

The plaintiffs shipped on the 29th July 1797, at Alexandria in Virginia, 1800 bushels of Indian corn in bulk, in the sloop

*for New York, amounting as per invoice to 1389 dollars and 32 cents.

It appeared by the protests and deposition of captain Seabury, who was a part owner of the vessel, that he sailed from Alexandria for New York, but having met with bad weather, he put into the port of Philadelphia for a market. There the hatches were opened, and a sample of the corn was taken out and found to be in good order. From thence he sailed for New York on the 18th August, the vessel and cargo being well conditioned, and no part of the cargo having been shifted or altered since the insurance. In her passage, the sloop started her planks, filled with water off Sandy Hook, and sunk between Shrewsbury and Barnegate.

The broker proved, that the policy was effected at the lowest premium, and in the order to make insurance, the sloop Sally was called a good vessel, to sail from Philadelphia to New York. Had he been informed, that the corn was loaded in Alexandria, he would have inserted it, either in the body, or margin of the policy. The circumstances of the Indian corn being shipped at Alexandria, or of the sloop's having met with bad weather in her passage to Philadelphia, were not communicated either to the broker or underwriters.

The defendants resisted the claim of the plaintiffs, on the grounds of misrepresentation and undue concealment of material facts. The sloop was called a good vessel, though she had encountered stormy weather in her voyage from Alexandria. Whether she needed repairs or not does not appear. The captain's protest omits the material circumstance of the bad tempestuous weather he experienced after leaving Virginia, and differs in some particulars from his deposition.

Indian corn is a commodity highly perishable; it will swell in the hold of a vessel generally tight, and particularly in a hot and wet season. It is probable, the loss of the sloop arose from the moist heated state of the corn. It was not consistent with good faith to keep the previous voyage from the knowledge of the underwriters, with all its attendant circumstances. They receive the lowest premium, but if they had been made acquainted with all the facts, they would either have demanded a higher rate of insurance, or have refused to subscribe the policy. The law is not so unreasonable as to require positive proof of fraud in such cases, as lie wholly within the knowledge of the adverse party. It may be inferred from circumstances. Parke 242–3. Concealment of material facts will vitiate a policy and all other contracts, on the principles of natural law. Ib. 199, 203. 3 Burr. 1909. 1 Espin. 69. 2 Stra. 1183. Unless a full disclosure is made of all the circumstances of the intended voyage, *even with respect to the track the ship intends to take, the assured cannot recover. 7 Term Rep. 162. [*32 Even if a broker does not mention a material fact to an underwriter, the latter is discharged from liability. Park 234. But

[Pine *v.* Vanuxem, Pratt et al.]

here the voyage contemplated by the policy was never in fact begun. The words as to the port of loading are highly important; and it has been adjudged that a concealment of the true port of loading will vacate a policy. 1 Bla. Rep. 463. Hodgson *v.* Richardson.

It was answered by the plaintiffs, that there was no evidence whatever of fraud, misrepresentation, or improper conduct on their part. There is no proof that the sloop was damaged in her voyage to Philadelphia, or required repairs there. It is true, the deposition of the captain and his cross examination is more minute than his protests; the latter including the events which happened from the last port of departure, and no more, according to the usual custom. If conduct of a criminal nature is imputed to the assured, it is incumbent on the assurers to make it out by proof. Park. 242.

It is perfectly immaterial where the corn was received on board. The sloop and cargo were in good order and condition when she sailed from Philadelphia. The corn was inspected and found to be well preserved; it was not shifted or. altered, after the subscription of the policy. As to the corn swelling in bulk, and thereby forcibly starting the planks of the vessel, it is mere conjecture, unsupported by evidence. The plaintiffs could have no inducement to· conceal the lading of the corn at Alexandria, because by the express terms of the policy, the defendants were not liable to an average loss on the Indian corn; and the most trivial event which had ever happened to the Sally, might with equal propriety have been insisted on being communicated to the underwriters, as the passage of her from Alexandria to Philadelphia.

The case of Hodgson *v.* Richardson, so much relied on, differs greatly from the present. There the goods were perishable articles, and put on board at Leghorn on the 10th August; the insurance was at and from Genoa, liable to average, and the vessel did not sail from Genoa till the 5th January following, and the insurance was made on the 20th January, without any communication of these particulars to. the assurers, though well known to the assured. The cargo being damaged by a storm, the assured recovered as for a partial loss, but the court granted a new trial for the concealment; inasmuch as the goods were liable to take damage, by having lain so long on board as five months, and the policy being originally bad, the assured were *33] not entitled to recover, though the loss happened by a storm. *The distinction between the two cases needs no further comment.

SHIPPEN, C. J. gave it in charge to the jury, that the law will not presume that any one has been guilty of fraud, nor set aside a contract on that ground, unless it be fully and satisfactorily proved. The burthen of the proof lies on the person who would avail himself of the fraudulent conduct imputed; (Park. 242)

[Sword's Lessee *v.* Adams.]

but, from the nature of the thing, circumstantial evidence is all that can be reasonably expected in cases of this nature. It belongs to the jury to say, whether their minds are satisfied, that there has been any misrepresentation in the present instance.

Insurances are contracts of indemnity; they should be entered into and fulfilled with the purest good faith. The special facts upon which the contingent chance is to be computed, lie most commonly in the knowledge of the insured only. 3 Burr. 1909. 1 Bl. Rep. 593. The underwriter trusts to his representation, and proceeds upon confidence, that he does not keep back any circumstance in his knowledge. Though the suppression should happen through mistake without any fraudulent intention, yet still the underwriter is deceived and the policy is void. If one is kept ignorant of any material circumstance, he may safely say it is not his contract. 1 Bl. Rep. 465. Whether the fact concealed is material to the risk run, is matter of fact. If material, the consequence is matter of law, that the policy is bad. These are principles of universal law, and fully recognized in the English books.

It is of considerable weight in the present case, that the defendants were not liable by the words of the policy for an average loss on the Indian corn, and it has been very properly distinguished from Hodgson *v.* Richardson, cited by the defendants' counsel, where the port of loading was unquestionably important.

It is not of moment, whether the swelling of the corn might have occasioned the sinking of the vessel, or whether the loss arose from any other cause. But the point worthy of consideration is, whether the risk run was really different from the risk understood and intended to be run, at the time of the agreement. 3 Burr. 1909. If a full communication of the corn's being laden at Alexandria, and the sloop's having met with bad weather in her passage to this port, would have varied the risk of the underwriters, and induced them to demand a higher premium than $1\frac{1}{2}$ per cent., or utterly to refuse their subscription, then the defendants were deceived and are entitled to a verdict; but if the fact *is found to be otherwise, then the concealment is [\*34 of an immaterial circumstance, and the policy is not vacated thereby.

Verdict for Vanuxem for $687\frac{38}{100}$ dollars, and against Pratt and Kintzing for $880\frac{8}{100}$.

Mr. Rawle, *pro quer.* Messrs. Ingersoll and Dallas *pro def.*