# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CHRISTINA CONNELLY, | § | |
| as assignee of Ronald B. Brown, Jr., | § | No. 426, 2015 |
| | § | |
| Plaintiff Below-Appellant, | § | Court Below:  Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | C.A. No. K14C-09-002 |
| STATE FARM MUTUAL | § | |
| AUTOMOBILE INSURANCE | § | |
| COMPANY, | § | |
| | § | |
| Defendant Below-Appellee. | § | |

Submitted: February 24, 2016
Decided:     March 4, 2016

Before **STRINE**, Chief Justice; **VAUGHN** and **SEITZ**, Justices.

Upon appeal from the Superior Court.  **REVERSED**.

William D. Fletcher, Jr., Esquire (*Argued*), Schmittinger & Rodriguez, P.A., Dover, Delaware, for Appellant.

Colin M. Shalk, Esquire (*Argued*), Casarino Christman Shalk Ransom & Doss, P.A., Wilmington, Delaware, for Appellee.

**STRINE**, Chief Justice:

# I.    INTRODUCTION

The resolution of this appeal turns on a single issue: When does a claim that an insurer acted in bad faith by failing to settle a third-party insurance claim accrue for purposes of the statute of limitations?  Christina Connelly—who appeals the Superior Court's dismissal of her claim against State Farm Mutual Automobile Insurance Company—contends that a claim accrues only when the insured suffers a judgment in excess of policy limits, and that judgment becomes final and non-appealable.  State Farm counters that the claim accrues when the insurer allegedly acts in bad faith and breaches its duty to the insured.

Although this Court has never addressed that precise issue, courts in other states that have considered it, and the weight of expert authority on insurance law, are in accord that a bad-faith failure-to-settle claim accrues when an excess judgment becomes final and non-appealable.  That approach conserves litigant and judicial resources.  It also properly aligns the incentives of the insurer and its insured by allowing them to join efforts in defending the underlying third-party insurance claim without a stayed breach-of-contract claim causing a conflict of interest between them.  Further, to state a claim that the insurer breached its implied duty to act in good faith, the insured must plead damages, which she cannot do before there is a final excess judgment against her.

The majority position is also consistent with Delaware courts' traditional approach to indemnity claims, which are analogous to insurance claims in that both involve a contractual obligation to compensate the indemnified party that arises only once certain conditions are met, and in both cases requires that the underlying cause of action must be resolved and the indemnified party must suffer a loss before the indemnifying party is required to cover the indemnified party's liability. That approach avoids premature suits that may never need to be brought, and ensures that litigation ensues only when necessary and when the key facts are settled.

In view of these considerations, we find that a claim against an insurer for acting in bad faith by failing to settle a third-party insurance claim accrues when an excess judgment against an insured becomes final and non-appealable. Accordingly, we reverse the Superior Court's decision.

## II.    BACKGROUND

The incident that led to this action happened on October 12, 2007, when Ronald Brown rear-ended Connelly's Chevrolet Cavalier with his Dodge Caravan. Brown was insured under a State Farm policy that provided automobile liability coverage of $100,000 per person and $300,000 per occurrence. When Connelly sued Brown for injuries she suffered as a result of the car crash, State Farm

2

provided Brown legal counsel in accordance with his policy. Under the policy, State Farm had the exclusive right to control defense strategy and settlement.

On May 10, 2011, Connelly offered to settle her case against Brown for $35,000. State Farm rejected the offer and required Brown to defend Connelly's claim at trial. State Farm and Brown also stipulated that "Brown admits his negligence was the proximate cause of this October 12, 2007 automobile accident."[1] The parties went to trial in the Superior Court, where the jury awarded Connelly $224,271.41.

After the jury verdict, Brown and Connelly filed four post-trial motions.[2] In a March 30, 2012 opinion, the Superior Court denied Brown's motions and ordered judgment to be entered for Connelly for the $224,271.41 jury award, pre-judgment interest of $92,958.96, costs of $5,435.28, and post-judgment interest of $10,580.64.[3] State Farm later paid Connelly $151,601.93 of the $333,246.29 owed to her. Neither Brown nor State Farm made any additional payments on the outstanding $181,644.36. The thirty-day period for Brown to appeal the excess judgment against him to this Court expired on April 29, 2012.

---

[1] App. to Opening Br. at 31 (Pretrial Stipulation and Order – Personal Injury Actions, *Connelly v. Brown*, C.A. No. 08C-05-031 (Del. Super. May 10, 2011)).

[2] Brown filed (1) a Motion to Alter or Amend the Judgment or, in the alternative, a Motion for a New Trial; (2) a Motion for Relief from the Judgment; and (3) a Motion for Stay of Execution of the Judgment. Connelly filed a Motion for Prejudgment Interest. *See Connelly v. Kingsland*, 2012 WL 1408880 (Del. Super. Mar. 30, 2012).

[3] *See id.*

On September 3, 2014, Connelly brought a claim against State Farm and Brown as Brown's judgment creditor. In her complaint, Connelly pled that "State Farm acted in bad faith, maliciously and without any reasonable justification, when it refused to settle [her] claim against its insured for a payment that was only 35% of the policy limit coverage purchased by [Brown]."[4] She also pled that "State Farm acted in bad faith, maliciously, without any reasonable justification, and in breach of its contractual obligations to [Brown] when it determined not to seek appellate review of the [excess judgment]."[5]

After State Farm moved to dismiss Connelly's complaint for lack of standing, on March 3, 2015, Connelly obtained an assignment of Brown's rights to pursue legal action against State Farm. Connelly then moved to amend her complaint to reflect Brown's assignment, which the Superior Court granted on April 2, 2015.[6] On May 8, 2015, State Farm moved to dismiss Connelly's complaint on the ground that it was barred by the three-year statute of limitations under 10 *Del. C.* § 8106 that, according to State Farm, began to run either on May 10, 2011 when Connelly made her settlement offer or on June 9, 2011 when the offer expired.

---

[4] App. to Opening Br. at 17 (Compl. ¶ 18).
[5] *Id.* at 18 (Compl. ¶ 20).
[6] We note that at that point, Brown should have been dropped as a defendant and not have remained as a party.

4

On July 22, 2015, the Superior Court granted State Farm's motion to dismiss Connelly's claims. In considering when the statute of limitations began to run, the trial court placed importance on Connelly's allegations as to when State Farm breached its contractual duties.[7] The Superior Court concluded that "the statute began to run at the time of the wrongful act, which . . . is the date [State Farm] denied [Connelly's] settlement demand" because it was then that Connelly was "made aware of the possibility that her claims would be denied, putting her on notice as to possible causes of action."[8] Connelly now appeals the Superior Court's dismissal of her claim.

---

[7] For example, the Superior Court stated the following:
- "[T]he complaint contends that [State Farm] breached its contractual duties in the aforesaid manner, on May 10, 2011." *Connelly v. State Farm Mut. Auto. Ins. Co.*, 2015 WL 4656549, at *3 (Del. Super. July 22, 2015).
- "[Connelly] is explicit in *when* she believes she was aggrieved: '*In May of 2011*, Defendant State Farm acted in bad faith, maliciously, and without any reasonable justification refused to pay $35,000 from its $100,000 policy coverage limits to fully satisfy [Connelly's] claim.'" *Id.* (citing Compl. ¶ 18) (emphasis in original).
- "Before the Commissioner, [Connelly] argued that April 29, 2012 was the date upon which the statute of limitations began because the time for an appeal expired on that date." *Id.*
- "[Connelly's] complaint establishes that it finds the moment of breach to be when [State Farm] denied the settlement offer." *Id.*
- "To be clear, [Connelly] repeated this for a second time when she stated: 'Defendant State Farm acted in bad faith [. . .] in failing to accept [Connelly's] settlement offer[.]'" *Id.*
- "It is [Connelly's] own words that tell us when the statute of limitations began to run." *Id.*

[8] *Id.* (citing *Hostetter v. Hartford Ins. Co.*, 1992 WL 179423, at *4 (Del. Super. July 13, 1992)).

5

### III.  ANALYSIS

"Whether a complaint is barred by a statute of limitations is a question of law that we review *de novo*."[9]  The sole issue on appeal is when the bad-faith failure-to-settle claim against State Farm accrued for purposes of the three-year statute of limitations.[10]  This is an issue of first impression for this Court.  But, some basic principles of our law guide our approach to addressing the novel question before us.

A duty of good faith and fair dealing is implied in every contract.[11]  In the context of an insurance policy, the implied covenant has historically included a duty to "settle [claims] within policy limits where recovery in excess of those

---

[9] *LeVan v. Indep. Mall, Inc.*, 940 A.2d 929, 932 (Del. 2007) (citing *Parker v. Gadow*, 893 A.2d 964, 966 (Del. 2006)).

[10] *See Connelly*, 2015 WL 4656549, at *4 ("The Court is granting Defendant's motion to dismiss, based solely on the statute of limitations issue which arose in Defendant's response to Plaintiff's motion for leave to amend the complaint.").

[11] *See, e.g.*, *E.I. DuPont de Nemours & Co. v. Pressman*, 679 A.2d 436, 449 (Del. 1996) ("An implied covenant or duty of good faith and fair dealing is also a longstanding fixture of the common law of contracts."); *see also Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 440–42 (Del. 2005) ("The requirement that all parties to an insurance contract act in 'good faith' toward one another spans at least three centuries of American legal thought. . . .  Recognized in many areas of the law, the implied covenant attaches to every contract, including contracts of insurance.") (footnotes omitted); *Pine v. Vanuxem*, 3 Yeates 30, 33 (Pa. 1800) ("Insurances are contracts of indemnity; they should be entered into and fulfilled with the purest good faith."); 45 C.J.S. *Insurance* § 584 (2007) ("[A] duty of good faith and fair dealing generally runs from the insurance company to the insured.  The duty of good faith and fair dealing is imposed upon insurers because a special relationship exists between insurers and insureds.  The relationship arises out of the parties' unequal bargaining power and the nature of insurance contracts which would allow unscrupulous insurers to take advantage of their insureds' misfortunes in bargaining for settlement or resolution of claims.") (footnotes omitted).

limits is substantially likely."[12]  "The basis of the insurer's duty to settle within policy limits is the insurer's exclusive control over settlement negotiations and defense of litigation, which results in a conflict of interest between the insurer and the insured."[13]  Because the insurance company's duty is grounded in its

---

[12] *See* STEVEN PLITT ET AL., COUCH ON INSURANCE § 203:13 (3d ed. 2008); *see also Torrez v. State Farm Mut. Auto. Ins. Co.*, 705 F.2d 1192, 1202 (10th Cir. 1982) ("[T]he insurance company had an obligation to look out for the interests of its insured and it had to exercise good faith. It is fundamental that an insurance company should settle a case within the policy limits if it was able to do so."); 46 C.J.S. *Insurance* § 1662 (2007) ("An insurance contract generally imposes a duty on the insurer to keep abreast of the progress and status of the litigation so that it may act intelligently and in good faith on settlement offers, and an implied covenant of good faith and fair dealing requires the insurance company to settle in an appropriate case even though the express terms of the policy do not impose the duty.") (footnote omitted); 46A C.J.S. *Insurance* § 1873 (2007) ("A liability insurer's implied duty of good faith and fair dealing in connection with the handling of a third-party claim against the insured includes the duty to act in a diligent manner in relation to the investigation, negotiation, defense, and settlement of the claim."); Annotation, *Insured's Payment of Excess Judgment, or a Portion Thereof, as Prerequisite of Recovery Against Liability Insurer for Wrongful Failure to Settle Claim Against Insured*, 63 A.L.R.3d 627, 631 (1975) ("It is well settled that where an insurer, defending a claim on behalf of an insured, negligently and in bad faith fails to effect a settlement within the limits of the insurance policy, and a judgment in excess of such limits results, the insurer has violated a legal duty arising out of the insurance relationship and running in favor of the insured.").

[13] COUCH ON INSURANCE, *supra* note 12, § 203:13; *see also id.* ("While the insured may prefer to settle within policy limits and avoid the risk of trial, the insurer may have an incentive to reject offers at or close to policy limits and proceed to trial with the hope of a lower judgment or a verdict in its favor. In determining whether or not to settle within policy limits, an insurer must give at least as much consideration to the interest of the insured as it does its own interest.") (footnote omitted); *Bourget v. Gov't Emps. Ins. Co.*, 456 F.2d 282, 285 (2d Cir. 1972) ("The basis for judicial imposition on liability insurers of a duty to exercise good faith or due care with respect to opportunities to settle within the policy limits 'is that the company has exclusive control over the decision concerning settlement within policy coverage, and company and insured often have conflicting interests as to whether settlement should be made[.]' . . . [W]hat gives rise to the duty and measures its extent is the conflict between the insurer's interest to pay less than the policy limits and the insured's interest not to suffer liability for any judgment exceeding them.") (internal citations omitted).

contractual relationship with the insured, a claim that the insurer breached that duty is subject to the three-year statute of limitations under 10 *Del. C.* § 8106.[14]

Connelly claims that State Farm breached its duty to Brown and acted in bad faith by refusing a $35,000 settlement offer, which was substantially below Brown's $100,000 policy limit. She asks us to adopt the majority position that a claim against the insurer for bad-faith failure to settle accrues only once there is a judgment in excess of policy limits against the insured and that judgment can no longer be appealed. Connelly points out that the majority position is based on sound policy because the excess judgment is speculative until it becomes final, and because an earlier statute of limitations would cause a conflict of interest between the insurer and the insured, and would waste judicial resources. Finally, Connelly asserts that had Brown brought a claim against State Farm before there was an excess judgment, the action would have likely been dismissed as premature.

By contrast, State Farm contends that the claim against State Farm for bad-faith failure to settle accrued either on May 10, 2011 when it refused to accept Connelly's settlement offer, or thirty days later when the offer expired. To support its position, State Farm primarily cites Delaware cases outside of the insurance context in which our courts have held that claims of breach of fiduciary duty, tort,

---

[14] *See* 10 *Del. C.* § 8106 ("[N]o action based on a promise . . . shall be brought after the expiration of 3 years from the accruing of the cause of such action . . . .").

or breach of contract, accrued at the time of the alleged wrongful act or breach.[15] In further support of its argument, State Farm points to the fact that Connelly repeatedly referred to May 10, 2011 in her complaint as the date when State Farm breached its duty and acted in bad faith in refusing to accept her settlement offer.

Although we have never addressed the issue of when a claim that the insurer acted in bad faith by rejecting a settlement offer accrues, decisions of our sister state courts have and they provide helpful insights in addressing what position our state should embrace.[16] The majority rule of courts in other states is that a bad-faith failure-to-settle claim accrues when the excess judgment becomes final and non-appealable.[17] Leading insurance law treatises and practice guides also reflect that majority position.[18]

---

[15] For example, on page 19 of its brief, State Farm cites *In re Tyson Foods, Inc.*, where the Court of Chancery determined that the statute of limitations for a breach of fiduciary duty claim against corporate fiduciaries "begins to run at the time that the cause of action accrues, which is generally when there has been a harmful act by a defendant." 919 A.2d 563, 584 (Del. Ch. 2007).

State Farm also cites *Worrel v. Farmers Bank of State of Delaware*, where this Court found that a "claim for recovery of a deficiency balance for [a debtor's] breach of the sales-debt instrument accrued and the four-year limitation . . . began to run from the date following debtor's default . . . ." 430 A.2d 469, 470 (Del. 1981).

Finally, State Farm cites *Albert v. Alex Management Services, Inc.*, where the Court of Chancery found that "[a] cause of action accrues under 10 *Del. C.* § 8106 at the time of the wrongful act, even if the plaintiff is ignorant of the cause of action" in the context of addressing claims against fund managers for breach of fiduciary duties, breach of contract, fraud, negligence, unjust enrichment, and conspiracy. 2005 WL 1594085, at *13 (Del. Ch. June 29, 2005).

[16] *See Rizzitiello v. McDonald's Corp.*, 868 A.2d 825, 829 (Del. 2005) ("Because this is an issue of first impression, we look to authorities outside of this jurisdiction for guidance.").

[17] *See, e.g.*, *Torrez*, 705 F.2d at 1202 ("[T]he cause of action for bad faith by State Farm did not accrue until the judgment was final on October 8, 1976. Only then could [the insured's] right against State Farm for exposing the estate to excess liability be perfected and assigned. It was

only then that the excess liability was established."); *Boyd Bros. Transp. Co. v. Fireman's Fund Ins. Cos.*, 540 F. Supp. 579, 582 (M.D. Ala. 1982), *aff'd*, 729 F.2d 1407 (11th Cir. 1984) ("[I]n cases alleging negligence or bad faith on the part of the insurer in the conducting or settling of litigation, the rule [] is that the cause of action does not accrue until the underlying litigation has ended."); *Evans v. Mut. Assurance, Inc.*, 727 So. 2d 66, 67 (Ala. 1999) ("This Court has on several occasions addressed the tort of negligent or bad-faith failure to settle. Each time, the Court has held that a cause of action arising out of a failure to settle a third-party claim made against the insured does not accrue unless and until the claimant obtains a final judgment in excess of the policy limits."); *Taylor v. State Farm Mut. Auto. Ins. Co.*, 913 P.2d 1092, 1097 (Ariz. 1996) ("Sound judgment and public policy convince us to follow the final judgment accrual rule. Thus, we hold that a third-party bad faith failure-to-settle claim accrues at the time the underlying action becomes final and non-appealable."); *Uyleman v. D.S. Rentco*, 981 P.2d 1081, 1084 (Ariz. Ct. App. 1999) ("Third-party bad faith failure-to-settle claims against an insurer do not accrue until the excess judgment against the insured becomes final and nonappealable."); *Comunale v. Traders & Gen. Ins. Co.*, 328 P.2d 198, 203 (Cal. 1958) (finding that the insured's suit for damages in excess of the policy limits based on an insurance company's failure to settle "arose . . . when the judgment in the bodily injury action became final"); *Woolett v. Am. Emp'rs Ins. Co.*, 143 Cal. Rptr. 799, 802 (Cal. Ct. App. 1978) (finding that a wrongful refusal to settle claim against the insurance company arose when there was a final judgment against the insured); *Blanchard v. State Farm Mut. Auto. Ins. Co.*, 575 So. 2d 1289, 1291 (Fla. 1991) ("[A]n insured's claim against an uninsured motorist carrier for failing to settle the claim in good faith does not accrue before the conclusion of the underlying litigation for the contractual uninsured motorist insurance benefits. Absent a determination of the existence of liability on the part of the uninsured tortfeasor and the extent of the plaintiff's damages, a cause of action cannot exist for a bad faith failure to settle."); *Jarvis v. Farmers Ins. Exch.*, 948 P.2d 898, 902 (Wyo. 1997) ("A cause of action by an insured against the insurer for a failure, in bad faith, to settle a claim will not accrue prior to the entry of a judgment against the insured in excess of policy limits."). The rationale behind the majority approach is that a claim for breach of a contractual duty does not accrue until a party suffers a loss—in this case, an excess judgment. *See, e.g.*, *Boyd Bros. Transp. Co.*, 540 F. Supp. at 582 ("Clearly the cause of action does not accrue until the litigation is over because the insured has not been injured until there is a final judgment for damages in excess of the policy limits."); ALLAN D. WINDT, INSURANCE CLAIMS & DISPUTES § 9:2 (6th ed. 2013), Westlaw (database updated March 2015) ("[A] cause of action for a carrier's breach of its duty to settle should accrue when an excess judgment is entered or an excess settlement agreement is entered into, at which time the insured will have been damaged by reason of the earlier failure to settle.").

We note that a minority of jurisdictions have extended the time for accrual of a bad-faith failure-to-settle claim even further and held that a claim accrues only when the insured actually pays the excess judgment. *See, e.g.*, *Am. Mut. Liab. Ins. Co. of Bos., Mass. v. Cooper*, 61 F.2d 446, 448 (5th Cir. 1932) ("The cause of action did not accrue until the judgment in favor of [the injured party] was affirmed by the Supreme Court of Alabama and was satisfied by [the insured] . . . ."); *see also* STEPHEN S. ASHLEY, BAD FAITH ACTIONS LIABILITY & DAMAGES § 3:36 (2d ed. 1997), Westlaw (database updated September 2015) ("A few courts have held that the insured must pay the excess judgment before suing the insurer for bad faith . . . . Most courts, however, take the view that the insured acquires a cause of action against an insurer guilty of bad

The majority rule—that a bad-faith failure-to-settle claim against an insurer accrues only once there is a final and non-appealable judgment—advances several important policy objectives. First, the majority rule reduces the possibility of a conflict of interest between the insurer and the insured. If we were to accept State Farm's position, an insured would have to bring a cause of action against the

faith as soon as an excess judgment against him becomes final and need not first pay the excess judgment."); *id.* § 7:6 ("[A] minority [of courts] follow the rule that the limitations period begins to run when the judgment is satisfied.").

But, the competing policy reason that has led most courts to determine that payment of the excess judgment is not a prerequisite to bringing a claim against the insurer, is that an insured should not have to pay a judgment that was caused by the insurer's bad-faith actions in violation of a duty that the insurer owed to the insured, just to recover that amount from the insurer. *See, e.g.*, 63 A.L.R.3d 631, *supra* note 12 ("Courts have stated that it would be unjust to require as a condition of obtaining relief that the insured pay a judgment, the wrongful imposition of which constitutes the gravamen of his complaint."); 1 LEO P. MARTINEZ ET AL., NEW APPLEMAN INSURANCE LAW PRACTICE GUIDE § 6.08[3][e] (2015) ("[M]ost courts have not required that [the excess] judgment [has] been satisfied by the insured as a pre-condition to suing the insurer . . . .").

[18] *See* J.H. Cooper, Annotation, *Limitation of Action Against Liability Insurer for Failure to Settle Claim or Action Against Insured*, 68 A.L.R.2d 892, 894 (1959) ("The courts are generally in accord that an action against a liability insurer for failure to settle a claim or action does not accrue and the pertinent statute of limitations does not begin to run at least until the judgment in favor of the injured person against the insured is final."); LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE § 236:103 (3d ed. 2000) ("An action against an insurer for failure to settle a claim does not accrue and the statute of limitations does not begin to run until the judgment against the insured is final. . . . Accordingly, the statute of limitations on an action against an insurer for negligent failure to settle a claim against an insured does not begin to run until all appeals of the judgment against the insured have been exhausted."); NEW APPLEMAN INSURANCE LAW PRACTICE GUIDE, *supra* note 17, § 6.08[3][e] ("An insurer may only be sued for failing to settle a case if an actual excess judgment has been entered against its insured. Put differently, an insured suffers damages that may be recovered typically only where a judgment is entered in excess of the policy limits. Thus, the mere prospect of an excess verdict or potential liability to the insured is not sufficient to warrant the imposition of extra-contractual liability on the insurer for failing to settle.") (internal citations omitted); BAD FAITH ACTIONS LIABILITY & DAMAGES, *supra* note 17, § 7:6 ("Most courts have held in third-party cases that the insured's cause of action accrues and the limitations period begins to run when the third party's judgment against the insured becomes final . . . ."); STEVEN PLITT & JORDAN ROSS PLITT, PRACTICAL TOOLS FOR HANDLING INSURANCE CASES § 7:36 (2014), Westlaw (database updated July 2015) ("In third-party failure to settle bad-faith claims the accrual of the cause of action occurs upon the entry of a final nonappealable judgment against the insured in excess of the policy limits.").

11

insurer while expecting the insurer to zealously defend her interests in the underlying insurance claim.[19] For its part, the insurer would have to expect the insured to fulfill her obligation to participate in the defense of the underlying claim while the insured's own bad-faith claim against the insurer is stayed. Second, the majority rule protects insurers from "bad faith claims for failing to settle even the most frivolous claims if the third-party claimant was willing to settle within the policy limits."[20] Finally, the rule saves the insured litigation costs that may turn out to be unnecessary if the court does not order an excess judgment.[21] As important, the majority rule avoids wasting judicial resources because it prevents the court from having to address premature claims before the insured can plead damages and the court can assess the reasonableness of the insurer's refusal to settle.[22]

---

[19] *See, e.g.*, *Taylor*, 913 P.2d at 1097 ("[A]n accrual rule for bad faith claims that requires the insured to bring an action before the judgment becomes final would force an insured to sue his carrier while, at the same time, depend on the carrier to zealously represent him at the appeal of his third-party claim.").

[20] BAD FAITH ACTIONS LIABILITY & DAMAGES, *supra* note 17, § 3:35A.

[21] *See, e.g.*, *Boyd Bros. Transp. Co.*, 540 F. Supp. at 583 n.3 ("[T]he final award might have been so minimal that this subsequent litigation would have been uneconomical for plaintiff to pursue.").

[22] *See, e.g.*, *Romano v. Am. Cas. Co. of Reading, Pa.*, 834 F.2d 968, 970 (11th Cir. 1987) ("Because the essential element of the appellant's claim may be reversed on appeal, it is logical to require its disposition before it may form the basis for another claim. . . . Such a result avoids duplicitous and unnecessary litigation . . . ."); *Boyd Bros. Transp. Co.*, 540 F. Supp. at 583 n.3 ("[A] decision on the issue of damages in this litigation would have to await a determination of damages and the final assessment of court costs and attorney fees in the underlying litigation."); *Campbell*, 840 P.2d at 140 n.20 ("[T]he final disposition of the case against the insured is critical evidence, though not in and of itself determinative, of whether the insurer's refusal to settle within the policy limits was unreasonable."); *Taylor*, 913 P.2d at 1096 ("The policy underlying

In pressing its argument that Delaware should adopt a different approach than the one taken by other states, State Farm is largely unable to call on relevant precedent to buttress its position.[23] Instead, State Farm points to cases outside of the insurance context where Delaware courts have held that claims of breach of fiduciary duty, tort, and breach of contract accrued at the time of the wrongful act or breach.[24] But those cases do not apply here because they do not involve a contractual obligation to make another party whole that only arises once certain conditions are met.

Admittedly, State Farm and the Superior Court both relied on an earlier unpublished decision of the Superior Court in *Hostetter v. Hartford Insurance Co.*, which supports State Farm's position and appears to hold that a third-party's claim

_____

the final judgment rule is clear. First, it is impossible to determine if the insurer acted in bad faith, or the extent of the insured's damages, until the underlying liability is finally determined. Second, because the usual essential element of the insured's third-party bad faith case—the entry of a judgment in excess of policy limits—may be reversed or modified on appeal, a different rule would result in precautionary and duplicitous litigation—a waste of both the courts' and the parties' time and resources.") (internal citation omitted); COUCH ON INSURANCE, *supra* note 12, § 236:103 ("Finality of [the] underlying action is necessary to establish not only the existence of damages but also the extent."); 46 C.J.S. *Insurance* § 1662 ("In order to recover for the insurance company's bad faith in carrying out settlement negotiations, it must be shown that the company's bad faith in settling the claims caused the excess judgment.").

[23] In fact, many of the cases adopting the majority rule involved State Farm. *See, e.g.*, *Torrez*, 705 F.2d at 1202 (rejecting State Farm's argument that the statute of limitations began to run before the judgment was final); *Taylor*, 913 P.2d at 1095–97 (rejecting State Farm's unsupported argument that a bad-faith failure-to-settle claim accrued when the excess judgment was entered by the trial court because that judgment was appealed); *Blanchard*, 575 So. 2d at 1291 (holding that a third-party failure to settle claim accrued after the underlying litigation was final); *see also Campbell v. State Farm Mut. Auto. Ins. Co.*, 840 P.2d 130, 140 n.20 (Utah Ct. App. 1992) noting in dicta that "the insured's cause of action does not accrue until final disposition of the underlying claim against the insured").

[24] *See supra* note 15.

13

that an insurer breached its implied duty of good faith to the insured accrued for statute of limitations purposes when the third party learned that the insurer refused to cover or defend her claim.[25] But that decision failed to consider any of the strong policy reasons why so many of our sister states and the leading treatises have adopted the rule that a bad-faith failure-to-settle claim against the insurer accrues only when there is a final and non-appealable excess judgment against the insured.[26] Most of all, while acknowledging that the good-faith duty that is at issue emanates from the implied contractual duty of good faith and fair dealing,[27] the Superior Court in *Hostetter* ignored that in Delaware, a cause of action for breach of contract includes damages as an element.[28] Here, State Farm itself took the position at oral argument that the insured did not suffer any injury other than a judgment in excess of the policy limits and that there cannot be any cognizable damages for a bad-faith failure to settle resulting solely from the fact that the

---

[25] *See Hostetter*, 1992 WL 179423 at *4 ("Viewing the record in the light most favorable to the plaintiff, the Court finds that as of her receipt of the June 17, 1982 letter, at the latest, plaintiff was sufficiently aware of [the insurance company's] position on coverage so as to put her on notice of the possible existence of her various causes of action.").

[26] *See id.* at *3–5. There are potential other ways to distinguish *Hostetter*, given the complex nature of its facts, but we acknowledge that State Farm and the Superior Court were correct to read the decision as supporting an approach inconsistent with the one we adopt here.

[27] *See id.* at *6.

[28] *See, e.g.*, *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003) ("In order to survive a motion to dismiss for failure to state a breach of contract claim, the plaintiff must demonstrate: first, the existence of the contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff."); *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 140 (Del. Ch. 2003) ("Under Delaware law, the elements of a breach of contract claim are: 1) a contractual obligation; 2) a breach of that obligation by the defendant; and 3) a resulting damage to the plaintiff.").

insured was forced to go through a trial.[29]  For example, State Farm argued that an

insured could not recover damages for the costs, time, and emotional distress she

endured as a result of having to participate in the defense of suit that ensued after

an insurer's bad-faith refusal to settle.[30]  State Farm further acknowledged that,

under its position, the statute of limitations would begin to run before the only

possible form of damages it concedes are awardable in this context would have

come into existence.[31]  In other words, State Farm argues that a claim for breach of

the implied duty of good faith should accrue before the plaintiff could plead the

required element of damages.  We are unable to grasp the benefits to this approach

that would outweigh its obvious inefficiency.

As to that issue, we note, by way of analogy, that Delaware courts have

followed the settled principle—which is reflected in our corporate code[32]—that

indemnity claims do not accrue until there is a final judgment.  For example, in

*Scharf v. Edgcomb Corp.*, this Court held that a CEO's indemnity claim did not

---

[29] Videotape: Oral Argument before the Delaware Supreme Court, at 26:17–27:01 (*Connelly v. State Farm*, No. 426, 2015 (Feb. 24, 2016)), *archived at* http://livestream.com/DelawareSupreme Court/events/4866010/videos/113373792.

[30] *Id.* at 26:17–26:47.

[31] *Id.* at 27:01.

[32] *See* 8 *Del. C.* § 145(c) ("To the extent that a present or former director or officer of a corporation has been *successful on the merits or otherwise* in defense of any action, suit or proceeding referred to in subsections (a) and (b) of this section, or in defense of any claim, issue or matter therein, such person shall be indemnified against expenses (including attorneys' fees) actually and reasonably incurred by such person in connection therewith.") (emphasis added).

15

accrue until the SEC completed its investigation of him.[33] In so holding, this Court established that "[a] cause of action for indemnification accrues when the officer or director entitled to indemnification can 'be confident any claim against him . . . has been resolved with certainty.'"[34] Putting it another way, this Court made clear that "[u]ntil the final judgment of the trial court withstands appellate review, the outcome of the underlying matter is not certain."[35] Additionally, numerous decisions of our Court of Chancery have consistently held that that an indemnity claim does not accrue until the underlying action is resolved.[36]

---

[33] 864 A.2d 909, 921 (Del. 2004).

[34] *Id.* at 919.

[35] *Id.* at 920; *see also LaPoint v. AmerisourceBergen Corp.*, 970 A.2d 185, 198 (Del. 2009) ("Indemnification claims do not accrue until the underlying claim is finally decided.").

[36] *See, e.g.*, *Paolino v. Mace Sec. Int'l, Inc.*, 985 A.2d 392, 397 (Del. Ch. 2009) ("It is generally premature to consider indemnification prior to the final disposition of the underlying action."); *Branin v. Stein Roe Inv. Counsel, LLC*, 2015 WL 4710321, at *6 (Del. Ch. July 31, 2015) ("[T]he vesting of a right under a contract and the accrual of a claim for statute of limitations purposes are not inextricably tied together. . . . Until [the underlying] litigation concluded, the Court would have been unequipped to determine whether [the plaintiff seeking indemnification from his former employer] had acted in good faith and in a manner reasonably believed to be within his authority."); *Huff v. Longview Energy Co.*, 2013 WL 4084077, at *2 (Del. Ch. Aug. 12, 2013) (quoting *Hampshire Grp., Ltd. v. Kuttner*, 2010 WL 2739995, at *53 (Del. Ch. July 12, 2010)) ("Under settled principles of Delaware law, 'indemnification claims do not typically ripen until after the merits of an action have been decided, and all appeals have been resolved.'"); *O'Brien v. IAC/Interactive Corp.*, 2009 WL 2490845, at *5 (Del. Ch. Aug. 14, 2009) (citing *Scharf*, 864 A.2d at 919) ("A cause of action for indemnification accrues when a director or officer entitled to indemnification can be confident any claim against him has been resolved with certainty."); *Quereguan v. New Castle Cty.*, 2006 WL 2522214, at *5 (Del. Ch. Aug. 18, 2006) (citing *Certainteed Corp v. Celotex Corp.*, 2005 WL 217032, at *3 (Del. Ch. Jan. 24, 2005)) ("Under Delaware law claims for common law indemnity do not accrue until the indemnitee can be confident that any claim against him has been resolved with certainty."); *Navellier Series Fund*, 2000 WL 1597890, at *9 ("[A]s a matter of fairness and common sense our courts have assumed that the statute of limitations for an indemnification claim under 8 *Del. C.* § 145 would run from the time that the underlying investigation or litigation was definitely resolved."); *see also* EDWARD P. WELCH ET AL., FOLK ON THE DELAWARE GENERAL CORPORATION LAW § 145.04, at 4-403 (2016) (citing *Sun-Times Media Grp., Inc. v. Black*, 954 A.2d 380, 396

16

Insurance claims are a type of indemnity claim because in both cases, the obligation to cover the indemnified party's costs arises only once certain conditions occur—in the context of a bad-faith suit against an insurer, a final and non-appealable excess judgment as to the third-party claim.[37] The same is true of indemnity claims that do not involve advancement of litigation expenses;[38] although in the indemnification context, the corporation's obligation to indemnify its fiduciary, employee, or agent is also conditioned on that party meeting the applicable standard of conduct.[39] Because of the similarities between indemnity and insurance claims, the same policies of serving litigative efficiency and preventing waste of judicial resources that have led Delaware courts to determine

---

(Del. Ch. 2008); *McLean v. Int'l Harvester Co.*, 817 F.2d 1214, 1223 (5th Cir. 1987)) ("The right to indemnify under [8 *Del. C.* § 145] is mandatory and does not vest until the successful conclusion of the action.").

[37] *See, e.g.*, 42 C.J.S. *Indemnity* § 54 (2007) ("Before an individual may seek indemnity on either an express or implied contract of indemnity, he or she must at least have had a legal duty to pay to the third party the sum in question. Under an express contract of indemnification, an indemnitee is not entitled to recover under the agreement until he or she has made an actual payment or has otherwise suffered an actual loss.") (footnote omitted); *id.* § 59 ("The statute of limitations applicable to an indemnity agreement does not begin to run until the indemnitee's liability is fixed and certain.").

[38] *See* 8 *Del. C.* § 145(e) (providing that a corporation may advance expenses incurred by a fiduciary in defending an action or proceeding before the final disposition if the fiduciary agrees to repay the expenses if it is determined that they are not entitled to indemnification by the corporation).

[39] *See id.* § 145(a), (b) (providing that a corporation may indemnify its officer, director, employee, or agent for expenses reasonably incurred in connection with an action against her in her corporate position "if the person acted in good faith and in a manner the person reasonably believed to be in or not opposed to the best interests of the corporation, and, with respect to any criminal action or proceeding, had no reasonable cause to believe the person's conduct was unlawful").

17

that an indemnity claim accrues when there is a final judgment[40] apply with analogous force to insurance claims and support our determination.

For these reasons, we hold that a claim that an insurer acted in bad faith when it refused to settle a third-party insurance claim accrues when an excess judgment against an insured becomes final and non-appealable.

## IV.   CONCLUSION

Thus, Brown's bad-faith failure-to-settle claim against State Farm, which was later assigned to Connelly, accrued when Brown's opportunity to appeal the excess judgment against him expired.   Accordingly, we reverse the Superior Court's judgment that dismissed Connelly's complaint as untimely.

---

[40] *See, e.g.*, *Sun-Times Media Grp., Inc.*, 954 A.2d at 403 ("The adjudication of [indemnification claims] on a stage-by-stage basis would be astoundingly wasteful and a clear signal of design failure."); *Navellier Series Fund*, 2000 WL 1597890, at *9 ("As a matter of litigative efficiency, it makes little sense for this court to decide claims for indemnification—as opposed to claims for advancement of litigation expenses—in advance of a non-appealable final judgment.  There is simply too great a risk that the appellate courts will take a different view than the trial court for it to make much sense to grapple with indemnification claims until the underlying litigation is concluded with finality. . . .  In the absence of a showing of undue hardship, [waiting to bring an indemnification claim until a definitive outcome is reached in the underlying matter] will reduce the chance that the court will engage in a wasteful exercise in predictive justice, only to see its work undone by a reversal of the trial court's judgment in the underlying matter.").