**SUPERIOR COURT
OF THE
STATE OF DELAWARE**

**ROBERT H. ROBINSON, JR.**
**JUDGE**

**Sussex County Courthouse
1 The Circle, Suite 2
Georgetown, DE 19947
Telephone: (302) 856-5264**

Submitted: March 17, 2022
Decided: June 30, 2022

Roger D. Landon, Esquire
Philip T. Edwards, Esquire
Murphy & Landon
1011 Centre Road, #210
Wilmington, Delaware 19805

Lindsey E. Imbrogno, Esquire
Stephen J. Milewski, Esquire
White and Williams LLP
Courthouse Square
600 N. King Street, Suite 800
Wilmington, Delaware 19801

Re:    *Patricia A. McLeod v. The Doctors Company*
       C. A. No. S19C-12-003 RHR

Dear Counsel:

Before the court is Defendant The Doctors Company's ("TDC") Motion for

Summary Judgment. For the following reasons, TDC's motion is **DENIED.**

In July of 2012, Patricia A. McLeod ("Ms. McLeod") sued Dr. Patrick Swier

("Dr. Swier") and Patrick Swier, M.D., P.A. (the "Company") alleging that Dr.

Swier breached the standard of care owed to her by performing surgery on her left

leg in 2010 without sufficient medical justification, leaving her with permanent and

painful injuries.[1] At the time, Dr. Swier and the Company were insured by TDC (the "Policy"). The limits of the Policy were $1,000,000.00 per claim. The Policy included a consent-to-settle provision that required TDC to obtain Dr. Swier's consent prior to settling any claim against him. When Ms. McLeod brought the lawsuit against Dr. Swier and the Company for medical negligence, Dr. Swier filed a claim with TDC as required by the Policy. TDC assigned an attorney to the case ("Trial Counsel").[2] Ms. McLeod produced an expert analysis of her damages that exceeded the Policy's limits.[3] TDC advised Dr. Swier of his potential exposure to an excess verdict and informed him of his right to obtain personal legal counsel to advise him about this potential exposure.[4] On November 2, 2014, Ms. McLeod made a $1,000,000.00 policy-limits demand to settle all her claims against Dr. Swier. Ms. McCleod's offer was never accepted by TDC and a consent to settle form was never signed by Dr. Swier.

The case went to trial. During jury deliberations, the jury returned three questions. All three questions related to damages, not liability. Still, TDC and Dr. Swier did not settle. On December 11, 2014, a jury found in favor of Ms. McLeod

---

[1] *McLeod v. Swier*, 2016 WL 355123, at *1 (Del. Super. Ct. Jan. 27, 2016), *aff'd*, 157 A.3d 757 (Del. 2017).

[2] Def. Ex D, D.I. 63, 110:20-111:22 (Deposition of Richard Galperin); Def. Opening Brief, D.I. 63 at 2. I note that Ms. McLeod agrees with TDC's description of the attorney as experienced and well-respected.

[3] Def. Ex. H, D.I. 63.

[4] Def. Ex. H, D.I. 63, TDC00189-91 (Letter dated March 17, 2014).

and returned a verdict in the amount of $3,425,515.00.[5] Because the verdict exceeded the $1,000,000.00 limit, Dr. Swier was left personally liable for the difference.

Dr. Swier assigned to Ms. McLeod his right to sue TDC for the judgment in excess of the Policy limit and she brought this current action as his assignee, seeking both compensatory and punitive damages. Ms. McLeod claims that TDC violated its duty of good faith and fair dealing to Dr. Swier when it failed to share with Dr. Swier three separate internal evaluations that estimated the chance of a verdict in favor of plaintiff at 50% and that damages could be as high as $4,000,000.00.[6] Ms. McLeod points to several communications indicating that Dr. Swier was unsure of whether he should consent to a settlement, and she argues that if he had been aware of these internal reports, he might have settled.

TDC filed the Motion for Summary Judgment on March 1, 2022. TDC contends that because the Policy had a consent-to-settle provision, TDC could not settle the claim against Dr. Swier unless wanted to settle. TDC points to many statements Dr. Swier made that indicated he would never agree to settle the case because he was adamant that he was not negligent. TDC contends that Dr. Swier's strong opposition to settling denied it any opportunity to settle and that therefore no

---

[5] *McLeod,* 2016 WL 355123, at *1.
[6] Pl. Answering Br., D.I. 65, at 16.

reasonable juror could find that TDC acted in bad faith. Additionally, TDC contends that a recovery in excess of the limits of the policy was never determined to be substantially likely.

Ms. McLeod does not contest the fact that Dr. Swier did not consent to settle. Rather, Ms. McLeod argues that Dr. Swier, by affidavit and during his deposition in this case, stated he would have settled at different points during the underlying litigation had he been advised to do so by TDC and Trial Counsel, or if TDC had provided him with adequate information of the state of the case—including TDC's internal risk evaluations. Ms. McLeod maintains that whether Dr. Swier would have consented to settle is a material issue of fact that cannot be resolved by summary judgment.

Summary judgment may be granted only if, when viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of fact and the moving party is entitled to relief as a matter of law.[7] When considering a motion for summary judgment, the court's role is to examine the record to determine whether genuine issues of material fact exist "but not to decide such issues."[8] Once the moving party meets this burden, the burden then shifts to the non-moving party to establish the existence of material issues of fact.[9] If, after discovery, the non-moving

---

[7] *Moore v. Sizemore,* 405 A.2d 679 (Del. 1979); Super. Ct. Civ. R. 56.
[8] *Merrill v. Crothall-Am., Inc.,* 606 A.2d 96, 99-100 (Del. 1992).
[9] *Moore v. Sizemore,* 405 A.2d 679, 681 (Del. 1979).

party cannot make a sufficient showing of the existence of an essential element of his or her case, then summary judgment must be granted.[10] However, if material issues of fact exist, or if the Court determines that it does not have sufficient facts to enable it to apply the law to the facts before it, then summary judgment is inappropriate.[11]

TDC has not met its burden to show the absence of issues of material fact for either compensatory or punitive damages. It is undisputed that there was an offer to settle at policy limits and that Dr. Swier never gave his consent to settle. It is also undisputed that Dr. Swier received notice of his potential exposure to an excess verdict and his option to consult personal counsel.[12] However, Dr. Swier, in both his affidavit and during his deposition in the present litigation, maintains that he would have consented to settle had he been either advised to do so or fully informed of the state of the litigation by Trial Counsel or by TDC's representatives.[13]

Cited by both parties, *Connelly v. State Farm Mutual Automobile Insurance Co.* provides that "[i]n the context of an insurance policy, the implied covenant of

---

[10] *Burkhart v. Davies,* 602 A.2d 56, 59 (Del. 1991), *cert. den.*, 112 S. Ct. 1946 (1992); *Celotex v. Catrett,* 477 I.S. 317, 322-23 (1986).

[11] *Ebersole v. Lowengrub,* 180 A.2d 467, 470 (Del. 1962).

[12] Def. Ex. H, D.I. 63. Defendant claims that within this letter Ms. Dougherty informed Dr. Swier of the "consent-to-settle" provision. Def. Opening Brief at 16. I have reviewed this letter and have not found where Ms. Dougherty informed Dr. Swier of the "consent-to-settle" provision.

[13] Plt.'s Ex. 34, D.I. 65, at ¶8.

good faith has included a duty to settle claims within policy limits where recovery in excess of those limits is substantially likely."[14]

TDC emphasizes that "[t]he basis of the insurer's duty to settle within policy limits is the insurer's exclusive control over settlement negotiations and defense of litigation, which results in a conflict of interest between the insurer and the insured."[15] TDC argues that because the Policy included a consent-to-settle provision, the insurance provider no longer has exclusive control over settlement negotiations and the conflict between insurer and insured is minimized to the point where the duty to settle no longer applies. In contrast, in *Connelly*, a conflict arose where there was an offer to settle at- or near-policy limits and the insurer desired to go to trial, but the insured wanted to settle within the policy limits to avoid exposure to an excess judgment.[16] As shown in this case, the conflict in *Connelly* may still exist even where there is a consent-to-settle provision.

There was an offer to settle for the limits of the policy—what TDC considered to be the full extent of its liability. TDC argues that there was no conflict between the insurer and the insured because neither wanted to settle the case. Dr. Swier's interest, as cited by TDC, was to avoid a personal judgment against him. TDC

---

[14] *Connelly v. State Farm Mut. Auto. Ins. Co.*, 135 A.3d 1271, 1274 (Del. 2016) (internal quotations omitted).
[15] *Id.* at 1275.
[16] *Id.*

identifies this desire through Dr. Swier's statements that he would file bankruptcy or move to Europe rather than pay any judgment against him.[17] TDC argues that Dr. Swier refused to settle because he was concerned about the impact an adverse judgment would have on his reputation, license, and credentials, more so than financial considerations. Fleeing the country or declaring bankruptcy would not protect any of these valuable interests, but merely could be viewed as a way to protect the finances of his family. And, Dr. Swier's interest in not personally paying a judgment against him would have been satisfied if TDC had settled the case. This would have, of course, freed Dr. Swier from other, drastic alternatives he may have considered. Contrary to TDC's position, Dr. Swier's statements demonstrate how his own interests and TDC's were not aligned during the litigation and a conflict— as contemplated in *Connelly*—may have persisted in spite of the consent-to-settle clause.

Further, Dr. Swier is emphatic in both his deposition and his affidavit that he would have given his consent to settle had he been properly informed of the circumstances of the case by TDC and his Trial Counsel.[18] Dr. Swier testified that he relied on the assessment of the case given to him by Trial Counsel. These statements create questions of fact regarding the issue of consent that must be

---

[17] Def. Ex. G, D.I. 63; Def Ex. F, D.I. 63, at 27, 177.
[18] Plt.'s Ex. 34, D.I. 65, at ¶8.

addressed by a jury. TDC is correct in arguing that if it settled the case without Dr. Swier's consent, it would have breached the contract. But that is not the question here. Instead, this Court must determine if TDC was prevented from settling as a matter of law. This Court cannot, as a matter of law, determine that it was Dr. Swier's action—or inaction—that prevented TDC from settling. As such, summary judgment is improper for the issue of breach of duty and the implied covenant of good faith.

TDC also argues that summary judgment is proper on the issue of punitive damages. Punitive damages are recoverable "in situations where the defendant's conduct, though unintentional, has been particularly reprehensible, *i.e.* reckless, or motivated by malice or fraud."[19] Conduct is willful or wanton if it reflects a "conscious indifference" or an "I don't care" attitude.[20] Ordinarily, Delaware reserves the issue of wantonness for the jury except in the clearest of cases.[21] The manner in which TDC failed to inform Dr. Swier of its own internal risk-assessment evaluations that showed Dr. Swier's risk of being exposed to an excess verdict— particularly in light of the alternatives Dr. Swier was allegedly considering—present genuine issues of material fact for a jury's determination.

---

[19] *Jardel Co., Inc. v. Hughes*, 523 A.2d 518, 529 (Del. 1987).
[20] *Cloroben Chem. Corp. v. Comegys*, 464 A.2d 887, 891 (Del. 1983) (internal citations omitted).
[21] *Jardel Co.*, 523 A.2d at 527 (citing *Eustice v. Rupert,* 460 A.2d 507, 509 (Del. 1983); *Hepburn v. Omega Prop. Grp., LLC*, 2020 WL 3222000, at *2 (Del. Super. Ct. June 15, 2020); *Djukic v. Doubletree Franchise LLC*, 2015 WL 9594708, at *1 (Del. Super. Ct. Dec. 16, 2015).

Lastly, I address TDC's contention that there is no issue of material fact concerning whether a judgment in excess of policy limits was substantially likely. While failing to cite any Delaware law, TDC identifies how other states have considered that "substantially likely" means "more likely than not."[22] TDC admits that its own assessment of the case was 50/50 with damages being awarded in excess of policy limits, possibly as high as $4,000,000.00. Trial Counsel also allegedly estimated at least a 50/50 chance of a defense verdict.[23] Additionally, Ms. McLeod's attorneys testified that, as the jury deliberated, defense counsel speculated that there would be a verdict in favor of Ms. McLeod for $2,000,000.00. Considering the above, this Court finds there are questions of material fact regarding the likelihood of an excess verdict.

Therefore, TDC's motion for summary judgment is **DENIED.**

**IT IS SO SORDERED.**

Sincerely,
*/s/ Robert H. Robinson, Jr.*
Robert H. Robinson, Jr., Judge

cc:     All counsel of record (by File & ServeXpress)

---

[22] *Conn. v. Wang*, 145 A.3d 906, 917-20 (Conn. 2016).
[23] Def. Opening Br., D.I. 63, at 20; Def. Ex. C, D.I. 63, 40:1-44:9, 44:2-9 (Deposition of Susan Shires).

9