## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

VARSITY BRANDS HOLDING CO. )
LLC, VARSITY BRANDS, LLC, and )
VARSITY SPIRIT, LLC, )
                                )
       Plaintiffs )
                                )
       v. )    C.A. No. N23C-10-283 MAA CCLD
                                )
ARCH INSURANCE COMPANY, )
UNITED STATES FIDELITY AND )
GUARANTY COMPANY, DISCOVER )
PROPERTY AND CASUALTY )
INSURANCE COMPANY, )
PHILADELPHIA INDEMNITY )
INSURANCE COMPANY, AXIS )
INSURANCE COMPANY, )
GREENWICH INSURANCE )
COMPANY, AMERICAN )
GUARANTEE AND LIABILITY )
INSURANCE COMPANY, NATIONAL )
UNION FIRE INSURANCE )
COMPANY OF PITTSBURGH, PA., )
MARKEL AMERICAN INSURANCE )
COMPANY, LEXINGTON )
INSURANCE COMPANY, RSUI )
INDEMNITY COMPANY, )
EVANSTON INSURANCE )
COMPANY, BERKSHIRE )
HATHAWAY SPECIALTY )
INSURANCE COMPANY, and )
WESTCHESTER FIRE INSURANCE )
COMPANY, )
                                )
       Defendants. )
                                )

Submitted: November 25, 2024
Decided: February 19, 2025

## MEMORANDUM OPINION

*Arch and PIIC's Motions to Dismiss:*
**GRANTED.**

*National Union and Lexington's Motion, joined by other Insurers, and RSUI's Motion:*
**DENIED.**

*Greenwich and Axis' Motion:*
**DENIED.**

David A. Dorey, Esquire, and James G. Gorman, Esquire of BLANK ROME LLP, Wilmington, DE, Natasha Romagnoli (Argued), Esquire of BLANK ROME LLP, New York, NY, David A. Thomas, Esquire (Argued) of BLANK ROME LLP, Los Angeles, CA, and Seth D. Lamden, Esquire, and Jason A. Frye, Esquire of BLANK ROME LLP, Chicago, IL, *Attorneys for Plaintiffs.*

Carmella P. Keener, Esquire of COOCH AND TAYLOR, P.A., Wilmington, DE, and Ronald P. Schiller, Esquire (Argued) and Anthony J. Palmer, Esquire of HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER, Philadelphia, PA, *Attorneys for Defendant Arch Insurance Company.*

Bruce W. McCullough, Esquire, of BODELL BOVÉ, LLC, Wilmington, DE, and Alexander E. Davis, Esquire (Argued) of GOLDBERG SEGALLA LLP, Greensboro, NC, *Attorneys for Defendant Philadelphia Indemnity Insurance Company.*

Joseph B. Cicero, Esquire of CHIPMAN BROWN CICERO & COLE, LLP, Wilmington, DE, and Ryan S. Appleby, Esquire (Argued) of GIBSON DUNN & CRUTCHER LLP, Los Angeles, CA, *Attorneys for Defendants National Union Fire Insurance Company of Pittsburgh, PA and Lexington Insurance Company.*

Megan T. Mantzavinos, Esquire of MARKS, ONEILL, O'BRIEN, DOUGHERTY & KELLY, P.C, Wilmington, DE, and Kristen C. Kish, Esquire (Argued) of MOUND COTTON WOLLAN & GREENGRASS LLP, New York, NY, *Attorneys for Defendant Greenwich Insurance Company.*

2

Marla S. Benedek, Esquire, of COZEN O'CONNOR, Wilmington, DE, and John Bonnie, Esquire (Argued) of WEINBERG WHEELER HUGGINS GUNN & DIAL, Atlanta, GA, *Attorneys for Defendant AXIS Insurance Company.*

Aimee M. Czachorowski, Esquire of LEWIS BRISBOIS BISGAARD & SMITH, LLP, Wilmington, DE, and Edward B. Parks, II, Esquire (Argued) of RUGGERI PARKS WEINBERG LLP, Washington, DC, *Attorneys for Defendant Navigators Insurance Company.*

Justin C. Barrett, Esquire of BAYARD, P.A., Wilmington, DE, *Attorney for Defendant RSUI Indemnity Company.*

Louis J. Rizzo, Jr., Esquire of REGER RIZZO & DARNALL LLP, Wilmington, DE, *Attorney for Defendants United States Fidelity and Guaranty Company and Discover Property and Casualty Insurance Company.*

**Adams, J.**

# I.    INTRODUCTION

In this insurance coverage dispute, plaintiffs seek coverage for underlying litigation involving allegations of sexual abuse of minors who participated in competitive cheerleading. The defendant insurance companies denied coverage for those underlying suits. Plaintiffs allege its primary insurers breached the insurance policies and refused to settle the underlying suits in bad faith. Plaintiffs seek a declaratory judgment defining the scope of the defendant insurance companies' duties to defend and indemnify plaintiffs.

Many of the defendant insurance companies moved to dismiss on various grounds. This Court finds certain defendants are not subject to its personal jurisdiction. Thus, the Court GRANTS those Motions to Dismiss pursuant to Superior Court Civil Rule 12(b)(2). All other Motions brought by the remaining insurance companies are DENIED.

## II.    FACTS[1]

### A.    THE PARTIES

#### 1.  Plaintiffs

Varsity Brands Holding Co., LLC ("Varsity Holding") is an Indiana LLC with its principal place of business in Texas.[2]  Varsity Brands, LLC ("Varsity Brands") is a Delaware LLC and a subsidiary of Varsity Holding.[3]   Varsity Spirit LLC ("Varsity Spirit") is a Tennessee LLC and a subsidiary of Varsity Brands.[4]

#### 2.  Defendants[5]

United States Fidelity & Guaranty Company ("USF&G") and Discover Property & Casualty Insurance Company ("Discover") are Connecticut corporations with principal places of business in Hartford, Connecticut.[6]

---

[1] These facts are drawn from Varsity's Second Amended Complaint and the documents integral thereto.  D.I. 84 ("Sec. Am. Compl.").  These allegations are presumed to be true solely for purposes of the Motions to Dismiss. Citations to the transcript of the September 25, 2024, hearing addressing the Motions to Dismiss are in the form "Tr. #" (D.I. 184).

[2]  Sec. Am. Compl. ¶ 7.

[3] *Id.*  ¶ 6.

[4] *Id.* ¶ 8.  For clarity, the Court refers to the Plaintiffs as "Varsity" and refers to Varsity in the singular, although "Varsity" represents multiple entities.  During oral argument, Varsity's counsel indicated that "all three Varsity Plaintiffs are Delaware entities," but this appears to be a misstatement.  Tr. at 47:18-19.  Varsity's Sec. Am. Compl. alleges only Varsity Brands is a Delaware entity.  A search of the Delaware Secretary of State's website confirms only Varsity Brands is a Delaware entity.  Varsity Spirit has a registered agent in Delaware but is listed as a Tennessee LLC.  *See* https://icis.corp.delaware.gov/Ecorp/EntitySearch/NameSearch.aspx (last visited Feb. 17, 2025).

[5] Each of the Defendants are authorized to write or sell insurance in Delaware.  *See* Sec. Am. Compl. ¶¶ 9-23.

[6] *Id.* ¶¶ 9-10.

Philadelphia Indemnity Insurance Company ("PIIC") is a Pennsylvania corporation with a principal place of business in Bala Cynwyd, Pennsylvania.[7]

Axis Insurance Company ("Axis") is an Illinois corporation with a principal place of business in Alpharetta, Georgia.[8]

Greenwich Insurance Company ("Greenwich") is a Delaware corporation with a principal place of business in Stamford, Connecticut.[9]

Arch Insurance Company ("Arch") is a Missouri corporation with a principal place of business in Jersey City, New Jersey.[10]

American Guarantee and Liability Insurance Company ("American Guarantee") is a New York corporation with a principal place of business in Schaumburg, Illinois.[11]

National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") is a Pennsylvania corporation with a principal place of business in New York, New York.[12]

Markel American Insurance Company ("Markel") is an Illinois corporation with a principal place of business in Glen Allen, Virginia.[13]

---

[7] *Id.* ¶ 11.
[8] *Id.* ¶ 12.
[9] *Id.* ¶ 13.
[10] *Id.* ¶ 14.
[11] Sec. Am. Compl. ¶ 15.
[12] *Id.* ¶ 16.
[13] *Id.* ¶ 17.

Lexington Insurance Company ("Lexington") is a Delaware corporation with a principal place of business in Boston, Massachusetts.[14]

Navigators Insurance Company ("Navigators") is a New York corporation with a principal place of business in Hartford, Connecticut.[15]

RSUI Indemnity Company ("RSUI") is a New Hampshire corporation with a principal place of business in Atlanta, Georgia.[16]

The named defendant insurers fall into three categories: the Primary Commercial General Liability ("CGL") Insurers,[17] the Excess CGL Insurers,[18] and the Employment Practices Liability ("EPL") Insurers (together, the "Insurers").[19]

Generally, the Primary CGL Insurers are obligated to defend and indemnify Varsity in cases alleging injury to persons or property.[20] The Excess CGL Insurers

---

[14] *Id.* ¶ 18.

[15] *Id.* ¶ 19.

[16] *Id.* ¶ 20. Varsity also included Evanston Insurance Company ("Evanston"), Berkshire Hathaway Specialty Insurance Company ("Berkshire"), and Westchester Fire Insurance Company ("Westchester") (collectively, the "EPL Insurers") as Defendants in the Second Amended Complaint. *Id.* ¶ 21-23.[16] In September 2024, the EPL Insurers notified the Court of a settlement in principle with Varsity, and the Court granted the parties' stipulation of dismissal without prejudice as to the EPL Insurers in December 2024. D.I. 172, 187.

[17] The Primary CGL Insurers are Arch, USF&G, Greenwich, Axis, Discover, and PIIC. Relevant to this dispute, Varsity Holding is the first named insured in the Arch and PIIC policies, "and each CGL policy is addressed to Varsity Holding's office in Memphis, Tennessee. Arch MTD Skoglund Ex. 2-11; D.I. 126 ("PIIC MTD Opp'n") Ex. 4. The Schedule of Named Insured(s) in each policy includes Varsity Brands and Varsity Spirit. Arch MTD Skoglund Ex. 2-11, Schedule of Named Insured(s); PIIC MTD Opp'n Ex. 4, Named Insured Schedule.

[18] The Excess CGL Insurers are American Guarantee, National Union, Markel, Lexington, Navigators, RSUI, and Arch.

[19] The EPL Insurers are Evanston, Berkshire, and West Chester.

[20] *See, e.g.*, Sec. Am. Compl ¶ 29.

are obligated to indemnify and defend Varsity in cases alleging injury to persons or property when the policy limit of the underlying Primary CGL Insurance policy (or lower-tier Excess CGL Insurance policy) is exhausted.[21] The EPL Insurers are obligated to indemnify Varsity in cases in which plaintiffs allege unlawful discrimination or sexual harassment.[22]

## B.    THE UNDERLYING LAWSUITS

In August 2022, counsel for a number of former adolescent cheer athletes announced they were filing suit in federal court in South Carolina asserting claims of sexual abuse which occurred while the athletes were still minors (the "South Carolina Federal Action").[23] In the South Carolina Federal Action, the athletes alleged Varsity created and controlled the organizations ultimately responsible for ensuring a safe environment for the young athletes to train and compete.[24] The athletes also alleged that coaches and choreographers provided them with drugs and alcohol at team parties.[25] The athletes sued Varsity, alleging various causes of action.[26] In June 2023, the United States District Court for the District of South

---

[21] *See, e.g., id.* ¶ 326.
[22] *See, e.g., id.* ¶ 385-87.
[23] *Id.* ¶ 397.
[24] *Id.* ¶ 398.
[25] *Id.* ¶ 403.
[26] Sec. Am. Compl. ¶ 408.

Carolina dismissed all of the claims against Varsity except the gross negligence, unjust enrichment, and negligent security claims.[27]

Varsity faced similar allegations from claimants in federal courts in North Carolina, Florida, Georgia, Tennessee, Ohio, and California, as well as a South Carolina state court action (together with the South Carolina Federal Action, the "Underlying Lawsuits").[28] Varsity faces potential suits in other states.[29]

As the Underlying Lawsuits began, Varsity notified Insurers of the claims and requested a defense.[30] Per Varsity, "[n]ot a single one of the Primary CGL Insurers that owed Varsity a defense met its obligation," and "[o]nly a few of the Primary CGL Insurers agreed to defend Varsity but then only as to certain of the claims and with improper conditions placed upon the staffing and hourly rates."[31]

The federal court in the South Carolina Federal Action ordered mediation in August 2023.[32] Varsity and "[a]ll but a few of the claimants" engaged in the mediation sessions in late 2023.[33] The mediation resulted in a conditional settlement demand from claimants' counsel.[34] Varsity notified the Insurers of the demand and

---

[27] *Id.* ¶ 409.
[28] *Id.* ¶¶ 411-18.
[29] *Id.* ¶ 419.
[30] *Id.* ¶ 420.
[31] *Id.* ¶¶ 420-21.
[32] Sec. Am. Compl. ¶ 422.
[33] *Id.* ¶ 422.
[34] *Id.* The conditional settlement between the claimants' counsel and Varsity included that "Varsity would have three weeks to determine if it could obtain funding for this amount." *Id.* Varsity alleges that, during settlement negotiations concerning the Underlying Lawsuits, Varsity and Arch

Varsity's desire to accept.[35]  Varsity also requested approval and funding from the Insurers.[36]  Varsity alleges Insurers "dragged their feet" before and after receiving such notice and made "unnecessary and unrealistic demands for information. . . ."[37]

The Insurers ultimately refused to fund the settlement up to their applicable policy limits, alleging the claims are excluded from coverage because of Sexual Abuse and Molestation Endorsement clauses in the various insurance contracts.[38]

## III.  PROCEDURAL HISTORY

Varsity filed its complaint on October 31, 2023.[39]  Shortly thereafter, Varsity filed an amended complaint adding additional defendants, as well as a second amended complaint correcting the named defendants (the "Second Amended Complaint").[40]

The Second Amended Complaint seeks relief under five causes of action: (I) Breach of Contract for the duty to defend against Primary CGL Insurers;[41] (II)

---

agreed via email to a three-week litigation standstill (the "Standstill Agreement"), which Arch violated by filing a declaratory judgement action in the U.S. District Court for the Western District of Tennessee.  *Id.* ¶¶ 462-64.

[35] *Id.* ¶ 423.

[36] *Id.*

[37] *Id.*

[38] Sec. Am. Compl. ¶¶ 423-24.  During oral argument, Varsity's counsel stated that the Underlying Lawsuits consisted of over 30 claimants. Tr. 44:11-15.  All but two actions—one in Florida and "another claim that was asserted against Varsity in the spring"— have settled. *Id.* at 44:15-18.

[39] D.I. 1.

[40] D.I. 6; D.I. 83; Sec. Am. Compl. The Second Amended Complaint removed Zurich American Insurance Company as a named defendant. *See generally* Sec. Am. Compl.

[41] Sec. Am. Compl. ¶¶ 425-31.

Breach of Contract for the duty to indemnify against Primary CGL Insurers;[42] (III)

Bad Faith Refusal to Settle against Primary CGL Insurers;[43] (IV) Declaratory

Judgment against all Insurers;[44] and (V) Breach of Standstill Agreement against

Arch.[45]  Several Insurers moved to dismiss.[46]

PIIC moved to dismiss for lack of personal jurisdiction and failure to state a

claim upon which relief could be granted.[47]  Alternatively, PIIC seeks a more definite

statement.[48]

Arch moved to dismiss for lack of personal jurisdiction and seeks dismissal

of Cause of Action III for failure to state a claim.[49]  Arch also seeks to dismiss or

strike Causes of Actions III and V based on confidential mediation communications

and inadmissible information.[50]

---

[42] *Id.* ¶¶ 432-38.
[43] *Id.* ¶¶ 439-50.
[44] *Id.* ¶¶ 451-60.
[45] *Id.* ¶¶ 461-70.
[46] *See* D.I. 100, Def. PIIC's Opening Br. in Supp. of its Mot. to Dismiss Pls.' Sec. Am. Compl. or, in the Alt., for a More Definitive Statement ("PIIC MTD"); D.I. 106, Opening Br. of Defs. Evanston, Berkshire, and Westchester's in Supp. of Their Mot. to Dismiss ("EBW MTD"); D.I. 107, Def. RSUI's Mot. to Dismiss and Joinder in Nat'l Union and Lexington's Mot. to Dismiss Pls.' Sec. Am. Compl. Under Rule 12(B)(1) ("RSUI MTD"); D.I. 108, Arch's Opening Br. in Supp. of Mot. to Dismiss the Sec. Am. Compl. for Lack of Personal Jurisdiction, or, in the Alt., Mot. to Strike and Dismiss ("Arch MTD"); D.I. 109, Defs. Greenwich and Axis' Mot. to Dismiss Pls.' Sec. Am. Compl.-Opening Br. ("GA MTD"); D.I. 111, Defs. Nat'l Union and Lexington's Opening Br. in Supp. of Mot. to Dismiss Pls.' Sec. Am. Compl. Pursuant to Rule 12(b)(1) ("NL MTD").  The EPL Insurers have subsequently been dismissed.  D.I. 172; D.I. 187.
[47] PIIC MTD.
[48] *Id.*
[49] Arch MTD.
[50] *Id.*

Greenwich and Axis moved to dismiss Causes of Action II-III for failure to state a claim and, alternatively, request that Cause of Action III be severed and stayed pending the resolution of Causes of Action I and II (the "Breach of Contract Claims").[51] Greenwich, without Axis, also moved to dismiss Cause of Action IV.[52] Like Arch, Greenwich and Axis also seek to dismiss or strike Cause of Action III based on confidential mediation communications and inadmissible information.[53]

National Union and Lexington moved to dismiss, alleging the action, as alleged against National Union and Lexington as Excess CGL Insurers, is not ripe.[54] RSUI also moved for dismissal adopting the same arguments as National Union and Lexington.[55] American Guarantee and Navigators joined National Union and Lexington's Motion to Dismiss.[56]

Briefing on the Motions was completed on July 26, 2024, and the Court heard oral argument on September 25, 2024, after which time the Court took this matter under advisement.[57]

---

[51] GA MTD.
[52] *Id.*
[53] Arch MTD at 1 n.1; D.I. 166 ("GA Joinder").
[54] NL MTD.
[55] RSUI MTD.
[56] *See* D.I. 112-13, 148, 150.
[57] D.I. 177. At oral argument, Arch objected to Varsity's use of certain demonstrative slides. The Court allowed some of the slides to be presented but permitted Arch to submit a supplemental submission to articulate its objection. Tr. 11:2-14:12. Arch addressed Varsity's slides by letter dated October 9. 2024. *See* D.I. 181. The transcript of the oral argument in this action, which is integral to the Court's decision, became available on November 25, 2024. D.I. 184.

## IV.    DISCUSSION

### A. The Court Lacks Personal Jurisdiction Over Arch and PIIC.

Arch and PIIC argue they, as companies neither incorporated nor headquartered in Delaware,[58] are not subject to personal jurisdiction.[59]  Personal jurisdiction over a nonresident defendant is analyzed through a two-part test.  First, the court examines whether the Delaware long-arm statute, 10 *Del. C.* § 3104(c), authorizes such jurisdiction.[60]  Next, the court determines whether such jurisdiction would violate the nonresident defendant's due process rights.[61]

### 1. The Long-Arm statute authorizes personal jurisdiction over Arch and PIIC.

Varsity contends Arch and PIIC are subject to personal jurisdiction pursuant to 10 *Del. C.* §§ 3104(c)(2) and (c)(6).  Under Section 3104, the Court may exercise personal jurisdiction over a nonresident who "[c]ontracts to supply services or things in this State" or "[c]ontracts to insure . . . any person . . . located within the State at the time the contract is made…"[62]  Although Arch and PIIC are subject to provisions of Delaware's long-arm statute, an exercise of personal jurisdiction would violate Arch and PIIC's due process rights.

---

[58] Sec. Am. Compl. ¶¶ 11, 14.
[59] Arch MTD at 12; PIIC MTD at 22; D.I. 147 ("Arch MTDR") at 3; D.I. 149 ("PIIC MTDR") at 16.
[60] *Hoechst Celanese Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 1991 WL 190313, at *1 (Del. Super. Sept. 10, 1991).
[61] *Id.*
[62] 10 *Del. C.* § 3104(c).

13

### a. *Arch and PIIC are subject to personal jurisdiction pursuant to* **10 Del. C. § 3104(c)(6).**

Varsity argues Arch and PIIC are subject to personal jurisdiction pursuant to § 3104(c)(6). In support, Varsity cites *Hoechst Celanese Corp. v. National Union Fire Insurance Company of Pittsburgh, PA*.[63] In *Hoechst*, the court held that, although the CGL policies were issued to a Delaware entity's out-of-state office, the act of insuring a Delaware entity enabled the court to exercise personal jurisdiction pursuant to § 3104(c)(6).[64] The key fact for the court was that the insured entity was a Delaware corporation.[65] This incorporation location satisfied the statute's requirement that the insured be a "person . . . located . . . within [Delaware] at the time the [insurance] contract [was] made."[66]

More recently, in *Energy Transfer Equity, L.P. v. Twin City Fire Insurance Co.*, the Superior Court held that Section 3104(c)(6) permits personal jurisdiction over insurers that issued directors and officers liability ("D&O") insurance policies to Delaware entities.[67] The court explained that, because the insured entities were organized under Delaware law, the insurers were "defendants who issued 'contracts

---

[63] 1991 WL 190313 (Del. Super. Sept. 10, 1991).
[64] *Id*. at *2–3.
[65] *Id*.
[66] *Id.* (citing 10 *Del. C.* § 3104(c)(6)).
[67] 2020 WL 5757343, at *1, *5 (Del. Super. Sept. 25, 2020).

to insure' a person (the Insureds and their officers and directors) located and/or to be performed in Delaware at the time the Policies were issued."[68]

Yet, the Superior Court concluded otherwise in *300 W 22 Realty, LLC v. Strathmore Insurance Co.*[69] In *300 W 22 Realty*, the court declined to exercise personal jurisdiction pursuant to § 3104(c)(6) over an insurer who provided insurance to a Delaware entity for property located in New York.[70] The court reasoned that the insurance policies at issue covered the property located outside of Delaware, not the entity itself.[71]

The Court finds the plain language of Section 3104(c)(6) authorizes personal jurisdiction over the non-resident insurers who provide insurance to a Delaware entity, so long as their due process rights are not violated. Varsity Brands is a Delaware LLC, which makes it a "person" located in Delaware pursuant to Section 3104(c)(6).[72]

---

[68] *Id.* at *5.

[69] 2023 WL 2300628, at *2-4 (Del. Super. Mar. 1, 2023), *aff'd*, 309 A.3d 1265 (Del. 2023) (TABLE).

[70] *Id.* at *2-4.

[71] *Id.* at *4. PIIC and Arch highlight *AR Cap., LLC v. XL Specialty Ins. Co.*, 2019 WL 1932061 (Del. Super. Apr. 25, 2019). PIIC MTD at 22-23; PIIC MTDR at 18-21; Arch MTDR at 12-13. In *AR Capital*, this Court held it lacked personal jurisdiction over an out-of-state insurer who issued difference in conditions ("DIC") insurance policies to a Delaware entity. 2019 WL 1932061 at *5. The court acknowledged the parties' contradictory arguments about the applicability of §3104(c), but did not make a conclusion about the statute's applicability; instead, it held generally that "Delaware's long-arm statute does not permit an exercise of personal jurisdiction, and an exercise of jurisdiction over DIC Defendants would violate due process." *Id.* Thus, the Court does not rely on *AR Capital.* for purposes of analyzing the applicability of 10 *Del. C.* §§ 3104(c)(2) and (c)(6) in this case.

[72] *Energy Transfer*, 2020 WL 5757343 at *5; *300 W 22 Realty*, 2023 WL 2300628 at *4.

The Court notes the key distinction between *300 W 22 Realty* compared to *Hoechst* and *Energy Transfer*. In *300 W 22 Realty*, the insurance policy provision at issue insured property located outside of Delaware.[73] Property insurance is not an issue here. Like *Hoechst* and *Energy Transfer*, the liability insurance and indemnification policies covered Varsity itself, and protected it from adverse judgments. Because Arch and PIIC contracted to insure a "person" in Delaware, they are subject to personal jurisdiction pursuant to Section 3104(c)(6).[74] The Court now turns to the due process analysis.[75]

## 2. Exercising personal jurisdiction over Arch and PIIC would violate due process.

The Fourteenth Amendment's Due Process Clause limits the personal jurisdiction of state courts.[76] Personal jurisdiction refers to the Court's ability to

---

[73] *300 W 22 Realty*, 2023 WL 2300628 at *4.

[74] 10 *Del. C.* § 3104 (c)(6) (explaining that the Court "may exercise personal jurisdiction over any nonresident . . . who in person or through an agent . . . [c]ontracts to insure . . . a[] person . . . located . . . within the State at the time the contract is made[.]").

[75] The Court need only determine that one provision of 10 *Del. C.* § 3104(c) applies before turning its focus toward the due process analysis. *See Hoechst*, 1991 WL 190313 at *1-2 (finding that the long arm statute was satisfied when one subsection applied). Since § 3104(c)(6) applies, the Court will not address the arguments concerning 10 *Del. C.* § 3104(c)(2).

[76] *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413-14 (1984)) (citation omitted). "The principles governing specific jurisdiction derive from and reflect two sets of values: treating defendants fairly, and protecting interstate federalism. Treating defendants fairly includes an idea of reciprocity between a defendant and a state; only when a defendant exercises the privilege of conducting activities within a state and enjoys the benefits and protections of the state's law may the state hold the defendant to account for related misconduct. Similarly, specific jurisdiction principles provide defendants 'fair warning' that a particular activity may subject the defendant to jurisdiction of a state. In addition to fairness concerns, specific jurisdiction principles consider the interests of the states in relation to each other, and seek to ensure that states with little legitimate interest in a suit do not encroach on states more affected by the controversy." 16 James Wm. Moore, *Moore's Federal Practice* § 108.42[1] (3d ed. 2022).

exercise power over a defendant.[77] There are two types of personal jurisdiction—general and specific.[78] This case concerns the latter.[79]

"For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State."[80] Courts can "exercise specific jurisdiction over a corporate defendant where the 'suit arises out of or relates to the corporation's contacts with the forum.'"[81] A nonresident must have sufficient minimum contacts with the forum state so as not to offend "traditional notions of fair play and substantial justice."[82] This means "there must be 'an affiliation between the forum State and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'"[83] In determining whether specific

---

[77] *See e.g. Sciortino v. Jarden, Inc.*, 395 F. Supp. 3d 429, 434 (E.D. Pa. 2019).

[78] *Daimler AG v. Bauman*, 571 U.S. 117, 126-127 (2014).

[79] Tr. 24:11-18, 33:4-6, 35:4-36:8; Arch MTD at 13-14; PIIC MTD at 22-24; Arch MTD Opp'n at 14-16; PIIC MTD Opp'n at 28-29.

[80] *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

[81] *Genuine Parts Co. v. Cepec*, 137 A.3d 123, 130 (Del. 2016) (quoting *Helicopteros*, 46 U.S. at 414 n.8) (cleaned up). The relationship between the defendant and the forum state "must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden*, 571 U.S. at 284 (emphasis in original) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

[82] *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The "minimum contacts" analysis "looks to the defendant's contacts with the forum state itself, *not the defendant's contacts with the persons who reside there*." *Walden*, 571 U.S. at 285 (emphasis added) (citing *Int'l Shoe*, 326 U.S. at 319). Notably, "the plaintiff cannot be the only link between the defendant and the forum." *Id.* at 285. Rather, "[d]ue process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons with the State." *Id.* at 286 (citing *Burger King*, 471 U.S. at 475).

[83] *Bristol-Myers Squibb Co. v. California.*, 582 U.S. 255, 262 (2017) (alteration in original) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

jurisdiction exists, the interests of the forum state must be weighed against the burden on the defendant.[84]

Varsity points to *Hoechst Celanese Corporation v. National Union Fire Insurance Company of Pittsburgh, Pa.* in support of its argument that the Court's exercise of personal jurisdiction over Arch and PIIC is warranted.[85] In *Hoechst*, court exercised personal jurisdiction where the defendant "must have foreseen the possibility that it could be haled into court in [Delaware]" when it insured a Delaware entity.[86] The foreign defendant (a third-party CGL insurer) challenged the application of Delaware's long-arm statute based on an arbitration clause between the parties.[87] That arbitration clause was never invoked by either party.[88]

The *Hoechst* court did not articulate the specific contacts between the defendant and Delaware, instead relying on the defendant's contacts with a Delaware company to justify the exercise of personal jurisdiction.[89] The court also noted that

---

[84] *Id.* at 263 (first quoting *Kulko v. California*, 436 U.S. 84, 92 (1978); then citing *Daimler*, 571 U.S. at 139-41, n. 20; then citing *Asahi Metal Indus. Co. v. California*, 480 U.S. 102, 113 (1987); and then citing *World-Wide Volkswagen*, 444 U.S. 286, 292 (1980)).

[85] 1991 WL 190313 (Del. Super. Sept. 10, 1991).

[86] *Id.* at *2 (first citing *Volkswagen*, 444 U.S. 286; and then citing *Kulko*, 436 U.S. 84). The arbitration provision provided: "Unless the parties otherwise agree, the arbitration shall be heard in London in accordance with the International Arbitration Rules of the London Court of Arbitration, and shall apply the law of the Cayman Islands as the proper law of the policy." *Id.*

[87] *Id.*

[88] *Id.* at *3.

[89] *Id.* at *2 ("A single contact between the defendant and the forum state may be sufficient, especially when there is a nexus between the contact and the cause of action. In this case, Tortuga entered into four separate contracts over a two-year period with an insured incorporated in the State of Delaware. In insuring a United States corporation which was incorporated under the laws

Delaware's interest in adjudicating the dispute was relevant to the personal jurisdiction analysis.[90] Notably, *Hoechst* was decided in 1991, before the Supreme Court of the United States' recent decisions in *Walden v. Fiore* and *Bristol-Myers Squibb v. California*, which clarify that minimum contacts must be made with the *forum state itself*, not a forum state's resident.[91] *Walden* teaches that overemphasis on the foreseeability of litigation "impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis."[92] *Bristol-Meyers Squibb* reiterates that, for a forum state to exercise specific jurisdiction, the relevant lawsuit must arise out of or relate to a defendant's contacts with the forum state.[93]

---

of this State, Tortuga must have foreseen the possibility that it could be haled into court in this forum.").

[90] *Hoechst*, 1991 WL 190313 at *2

[91] *Walden v. Fiore*, 571 U.S. 277 (2014); *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255 (2017).

[92] *Walden*, 571 U.S. at 289. *See also Bristol-Myers Squibb*, 582 U.S. at 265 ("What is needed—and what is missing here—is a connection between the forum and the specific claims at issue.").

[93] *Bristol-Myers Squibb*, 582 U.S. at 262. In *Bristol-Meyers Squibb*, the plaintiffs, most of whom were not residents of California, sued Bristol-Meyers Squibb in California state court, alleging the company's drug, Plavix, damaged their health. *Id*. at 258. The plaintiffs alleged a Bristol-Meyers Squibb product was defective and caused injuries, but the plaintiffs were not harmed in California. *Id*. at 259. Bristol-Meyers Squibb had several research facilities in California, along with 160 employees, 250 sales representatives and a small state-government advocacy office in Sacramento. *Id*. at 259-260. Plavix was developed and manufactured in New York and New Jersey. *Id*. at 259. Bristol-Meyers Squibb sold the product in California, but the nonresident plaintiffs did not allege they purchased the product from California sources. *Id*. The United States Supreme Court rejected the exercise of personal jurisdiction over Bristol-Meyers Squibb, finding there was an insufficient connection between the plaintiffs' claims and Bristol-Meyers Squibb's contacts with California. *Bristol-Meyers Squibb*, 582 U.S. at 258, 264-65.

19

Thus, the "proper focus" is "the relationship among the defendant, the forum, and the litigation."[94]  Delaware heeds this distinction.

In *In re Talc Product Liability Litigation*, the Superior Court declined to exercise specific jurisdiction over the claims asserted by the nonresident plaintiff.[95] The court reasoned that shipping some quantity of goods to a lab in Delaware "falls far short of the connection required between the forum and the specific claims at issue."[96]  A "defendant's unrelated forum activity is just that—unrelated to the jurisdictional determination."[97]

In *EBP Lifestyle Brands Holdings, Inc. v. Boulbain*, the Court of Chancery examined specific jurisdiction in the context of a stockholders' agreement.[98]  The plaintiff there sought to enforce a non-compete and non-solicitation clause in a stockholders' agreement it entered into with the defendant.[99]  The plaintiff, however, failed to show the defendant purposefully availed himself of the benefits and protections of this forum:

---

[94] *Walden*, 571 U.S. at 284 (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775 (1984)).  The *Hoechst* court noted that a "single contact between the defendant and the forum state may be sufficient, especially when there is a nexus between the contact and the cause of action."  1991 WL 190313 at *2.  This decision preceded *Walden* and *Bristol-Myers Squibb* and reflects a broad view of personal jurisdiction.  *Hoechst*'s single-contact point has not been expressly overruled, but it does not change the conclusion here.  The Insurers issued contracts to insure Varsity, but those contracts were negotiated and delivered outside of Delaware.  Insurers' "single contact" with a Delaware entity—the insurance contracts—does not constitute contact with Delaware itself.
[95] 2018 WL 4340012, at *12 (Del. Super. Sept. 10, 2018).
[96] *Id.* at *7.
[97] *Id.* at *6.
[98] 2017 WL 3328363, at *1 (Del. Ch. Aug. 4, 2017).
[99] *Id.* at *1.

> The dispute at issue is based on a contract that [the defendant] executed in California arising from conduct in which [the defendant] allegedly has engaged and continues to engage in California. The only connection to Delaware is that [the plaintiff] is a Delaware corporation and that the Stockholders' Agreement contains a Delaware choice of law provision. And, in that latter regard . . . [the defendant] did not purposefully avail himself of Delaware law—he was merely given the company's Stockholders' Agreement that contained a Delaware choice of law clause and told that he must sign if he wished to exercise his stock options. These facts are a far cry from the kind of "minimum contacts" that would satisfy due process.[100]

The court refused to exercise personal jurisdiction because such an exercise could neither meet the requirements of § 3104 nor satisfy due process.[101]

Varsity also cites to *Energy Transfer Equity, L.P. v. Twin City Fire Insurance Co.* in support of its argument for the exercise of personal jurisdiction.[102] In *Energy Transfer*, the Superior Court exercised personal jurisdiction over nonresident D&O

---

[100] *Id.* at *7; *see also id.* at *7 n.35 (first quoting *Burger King*, at 478) ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."); and then quoting *Mobile Diagnostic Gp. Hldgs., LLC v. Suer*, 972 A.2d 799, 805 (Del. Ch. 2009) ("It is well settled law that 'a contract between a Delaware corporation and a nonresident to…transact business outside Delaware, which has been negotiated without any contacts with this State, cannot alone serve as a basis for personal jurisdiction over the nonresident for actions arising out of that contract.'").

[101] *Id.* at *8. The Superior Court has observed the limitations of personal jurisdiction in the insurance space. *See Rosado v. State Farm Mut. Auto. Ins. Co.*, 2020 WL 3887880 (Del. Super. July 9, 2020) (granting an Illinois insurer's motion to dismiss against a Maryland resident based on lack of specific jurisdiction where the insurance contract was signed and executed, and the cause of action arose, in Maryland); *Eaton v. Allstate Prop. & Cas. Ins. Co.*, 2021 WL 3662451 (Del. Super. Apr. 28, 2021) (granting an Illinois insurer's motion to dismiss against a North Carolina resident based on lack of specific jurisdiction where the insurance contract was signed and executed in Maryland, and the cause of action arose in Delaware; the court noted that although "the physical accident occurred in Delaware . . . the basis of [the p]laintiff's claim against [the insurer] is not the vehicular accident, but rather the contractual obligation owed by [the insurer]").

[102] 2020 WL 5757343, at *6 (Del. Super. Sept. 25, 2020).

insurers, following the purposeful availment logic of *Hoechst*.[103] The court noted Delaware has an especially strong connection to D&O insurance disputes because "rarely are officers and directors of a Delaware entity sued for a breach of fiduciary duty outside of Delaware."[104]

Modern personal jurisdiction jurisprudence guides this Court in producing a different result from that in *Hoechst* and *Energy Transfer*. As discussed in *Walden* and *Bristol-Myers Squibb*, the court must first explore whether Arch and PIIC have established minimum contacts with Delaware.[105] Next, the court must determine whether this action arises out of or is sufficiently related to Arch and PIIC's connections to Delaware.[106]

The Court begins its analysis here by noting the connections between Delaware and the Insurers. Varsity emphasizes that PIIC and Arch are "authorized to sell or write insurance in Delaware and/or, at all material times, has conducted

---

[103] *Id.* (citations omitted).

[104] *Id.* The first *Energy Transfer* decision did not address the recent U.S. Supreme Court decisions in *Burger King*, *Walden*, or *Bristol-Myers Squibb*. The *Energy Transfer* court addressed these decisions when it denied the insurers' motion for interlocutory appeal, explaining that while these cases were not specifically addressed, the *Energy Transfer* court had incorporated their analysis in its prior holding. 2020 WL 6112299 at *4 (Del. Super. Oct. 16, 2020). The essential distinction by the *Energy Transfer* court was that, in providing D&O insurance to a Delaware corporation, the insurers could have foreseen being haled into Delaware. This Court recognizes the subtle, but substantial difference in providing D&O insurance to a Delaware corporation but focuses its decision solely on the facts presented here and the CGL policy— and parties— at issue.

[105] *Burger King*, 471 U.S. at 474 (citation omitted); *Walden*, 571 U.S. at 291 (citation omitted).

[106] *Burger King*, 471 U.S. at 472 (citation omitted); *Bristol-Myers Squibb*, 582 U.S. at 262 (citation omitted).

business within the State of Delaware."[107] This alone does not invoke specific personal jurisdiction. The policies were negotiated and executed outside of Delaware.[108] The Court also notes that only one plaintiff—Varsity Brands—is a Delaware entity. Contracting with a Delaware entity is insufficient, on its own, to support a finding of personal jurisdiction.[109]

This action neither arises out of nor is sufficiently related to Arch and PIIC's connections to Delaware. PIIC and Arch's policies, this lawsuit, and the State of Delaware are connected only because Varsity Brands is a Delaware entity. The Delaware connection advocated by Varsity thus contradicts the U.S. Supreme Court's recent holdings on the due process analysis for personal jurisdiction. By exercising personal jurisdiction over PIIC and Arch, in a dispute which concerns a contract executed at a company's Tennessee headquarters, the Court would be accepting the existence of minimum contacts based on Varsity Brand's connection to Delaware, not Arch and PIIC's.[110]

---

[107] Sec. Am. Compl. ¶ 25.

[108] Tr. 36:13-36:19, 41:5-41:12; Arch MTD at 5-6; Arch MTDR at 11; PIIC MTD Opp'n Ex. 4.

[109] *Burger King*, 471 U.S. at 478; *Lenape Props. Mgmt., Inc. v. Prudential Ins. Co. of Am.*, 2022 WL 17826010, at *2 (Del. Super. Dec. 20, 2022); *Aldossari v. Ripp*, 49 F.4th 236, 259 (3d Cir. 2022).

[110] Arch and PIIC's connection to Delaware is further attenuated because the primary named insured on their policies is Varsity Holding, which is not an entity formed under Delaware law. Arch MTD Skoglund Ex. 2-11; PIIC MTD Opp'n Ex 4. Arch and PIIC's policies only insure a Delaware entity as an additional named insured. Arch MTD Skoglund Exs. 2-11, Schedule of Named Insured(s); PIIC MTD Opp'n Ex. 4, Named Insured Schedule(s).

Like in *Bristol-Myers Squibb*, companies (Arch and PIIC) sold a product (insurance contracts) in the forum state (Delaware). Varsity did not purchase the relevant insurance in Delaware. While Arch and PIIC are licensed to sell insurance in Delaware, those connections are not related to this lawsuit. The fact that one of the plaintiffs is a Delaware corporation likewise does not change the analysis.[111] The insurance contracts were purchased outside of Delaware, and the alleged harm did not occur in Delaware because Varsity's underlying liability does not result from a Delaware case. In other words, no affiliation exists between the insurance policies and Delaware. "When there is no such connection, specific jurisdiction is lacking regardless of the extent of defendant's unconnected activities in the State."[112]

This Court's exercise of personal jurisdiction over Arch and PIIC is authorized by the long-arm statute, but under the facts of this case, the exercise of personal jurisdiction would offend due process. The Court grants PIIC and Arch's Motions to Dismiss for Lack of Personal Jurisdiction.

## B. The Claims Against the Excess CGL Insurers are Ripe.

Varsity's Excess CGL Insurers moved to dismiss, alleging the claims against them are not ripe because Varsity has not exhausted its lower-layer insurance policies.[113]

---

[111] *EBP*, 2017 WL 3328363 at *7.
[112] *Bristol-Myers Squibb*, 582 U.S. at 264 (citing *Goodyear*, 564 U.S. at 931, n. 6).
[113] NL MTD; RSUI MTD; *See* D.I. 112-13, 148, 150.

In evaluating whether an insurance coverage claim is ripe, Delaware courts adopt a "common sense" approach.[114] The court balances the interests of the party seeking relief against the interests of a court in refraining from addressing issues which are still developing.[115] A dispute is ripe if "litigation sooner or later appears to be unavoidable and where the material facts are static."[116] For purposes of a 12(b)(1) motion such as this, the court may look to facts alleged outside of the complaint.[117]

Five factors, known as the *Schick* factors, are relevant in assessing ripeness: (1) a practical evaluation of the plaintiff's legitimate interests in a prompt resolution of the question presented; (2) the hardship threatened by further delay in resolving the question; (3) the possibility that future factual development might affect the resolution; (4) the need to conserve scarce judicial resources; and (5) respect for identifiable policies of law concerning the matter in dispute.[118]

The *Schick* test favors ripeness. Some of the underlying disputes implicating liability insurance coverage are still being litigated. Varsity is currently defending a

---

[114] *Viacom Inc. v. U.S. Specialty Ins. Co.*, 2023 WL 2034445, at *2 (Del. Super. Feb. 16, 2023).
[115] *XL Specialty Ins. Co. v. WMI Liquidating Tr.*, 93 A.3d 1208, 1217 (Del. 2014) (citing *Stroud v. Milliken Enters., Inc.*, 552 A.2d 476, 480 (Del. 1989).
[116] *Id*. at 1217 (quoting *Julian v. Julian*, 2009 WL 2937121, at *3 (Del. Ch. Sept. 9, 2009)).
[117] *Homeland Ins. Co. of N.Y. v. Corvel Corp.*, 2011 WL 7122367, at *3 (Del. Super. Nov. 30, 2011); *K&K Screw Prod., L.L.C. v. Emerick Cap. Invs., Inc.*, 2011 WL 3505354, at *6 (Del. Ch. Aug. 9, 2011).
[118] *Schick Inc. v. Amalgamated Clothing and Textile Workers Union*, 533 A.2d 1235, 1239 (Del. Ch. 1987) (citation omitted).

claim in Florida which it alleges will implicate the Lexington excess CGL insurance policy.[119] As this court acknowledged in *Viacom, Inc. v. U.S. Specialty Insurance Co.*, Varsity's "ability to assess the risks associated with resolving the [Florida claim] versus proceeding to trial hinges in no small part on an understanding of the insurance coverage available."[120] As a practical matter, resolving this insurance coverage dispute assists Varsity in developing a plan to resolve the ongoing Underlying Lawsuits.[121] Therefore, as to the Florida claim which allegedly invokes the Lexington excess CGL insurance policy, the first factor is met. If the Court refused to resolve this insurance case until after all the Underlying Lawsuits are resolved, Varsity would face hardship. The second factor thus favors ripeness. Varsity would be forced to resolve the underlying disputes, without a clear indication as to whether liability would be paid by Varsity or the insurance carriers.

The Court recognizes that, with an ongoing dispute, Varsity may potentially face no liability. For the ongoing disputes, like the Florida claim, the third factor does not favor a finding of ripeness.

---

[119] D.I. 129, Pls.' Br. in Opposition to NL MTD ("NL MTD Opp'n") at 9.

[120] 2023 WL 2034445 at *2.

[121] *See id*. ("Delaying a decision as to coverage could result in a substantial expenditure of party and judicial resources to try a case the plaintiffs otherwise would resolve if they understood their exposure risk.").

By resolving this insurance coverage dispute, this Court may save the resources of the courts in which the ongoing underlying cases are filed;[122] the fourth factor thus favors ripeness. Insurance coverage disputes are well-suited for declaratory adjudication,[123] as contractual interpretation issues in insurance coverage disputes are questions of law,[124] and the declaratory judgments properly resolve questions regarding "legal relations."[125] Accordingly, the fifth factor is satisfied.

In determining whether an insurance coverage dispute against Excess CGL Insurers is ripe, the court examines whether the plaintiff has alleged facts indicating a reasonable likelihood that insurance coverage policies will be reached.[126] The Court finds the allegations alleged in the Second Amended Complaint are sufficient to meet this standard. As noted during oral argument, Varsity is named as a defendant in two ongoing tort cases in which the underlying victims allege sexual

---

[122] *See XL Specialty*, 93 A.3d at 1217 ("The underlying purpose of [ripeness] is to conserve limited judicial resources and to avoid rendering a legally binding decision that could result in premature and possibly unsound lawmaking.") (citation omitted); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. FedEx Corp.*, 2023 WL 4623626, at *14 (Del. Super. July 18, 2023) ("The Court understands that if the Delaware Action is not dismissed or stayed, litigating two concurrent actions in Delaware and [another state] will increase costs to the parties and double the use of judicial resources to adjudicate over duplicative issues."); *Viacom*, 2023 WL 2034445 at *2 ("Delaying a decision as to coverage could result in a substantial expenditure of party and judicial resources to try a case the plaintiffs otherwise would resolve if they understood their exposure risk.");.

[123] *Benefytt Techs., Inc. v. Cap. Specialty Ins. Corp.*, 2022 WL 16504, at *10 (Del. Super. Jan. 3, 2022) (citing *Harleysville Mut. Cas. Ins. Co. v. Carroll*, 123 A.2d 128 (Del. Super. 1956)).

[124] *Vaughn v. Stillwater Prop. & Cas. Ins. Co.*, 2017 WL 2709750, at *5 (Del. Super. June 23, 2017).

[125] 10 *Del. C.* § 6512.

[126] *XL Specialty*, 93 A.3d at 1217-18 (citing *Hoechst Celanese Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa*, 623 A.2d 1133, 1137 (Del. Super. 1992)).

27

misconduct by perpetrators.[127] These cases may result in substantial jury verdicts or settlements, and Varsity alleges that the existing settlement reaches the Excess CGL Insurers' policies.[128] While Varsity has not identified a monetary figure for its liability under the settlement agreement, the Court will not reject a finding of ripeness on this basis.

The claims against the Excess CGL Insurers are ripe, so National Union and Lexington's Motion to Dismiss is denied. RSUI's Motion to Dismiss, which raises the same arguments, is accordingly denied.

### C. Greenwich and Axis' Arguments for Dismissal Under Rule 12(b)(6) are Insufficient.

Greenwich and Axis moved for dismissal on various grounds, and also moved to strike sections of the Complaint related to confidential mediation communications. For the reasons below, Greenwich and Axis' Motions are denied.

#### 1. The motion to dismiss standard of review

The "pleading standards governing the motion to dismiss stage…are minimal."[129] The court must "accept all well-pleaded factual allegations in the Complaint as true."[130] The court also must "read the complaint generously" and

---

[127] Tr. at 44:15-16.
[128] NL MTD Opp'n at 12-13.
[129] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 536 (Del. 2011) (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896 (Del. 2002)).
[130] *Id.* (citing *Savor*, 812 A.2d at 896-97).

construe all such allegations "in a light most favorable to the plaintiff."[131]  The court "credits even vague allegations, so long as they provide the opposing party notice of the claim;…gives the non-movant the benefit of all reasonable factual inferences; and…denies the motion if recovery on the claim is reasonably conceivable."[132] Dismissal pursuant to Rule 12(b)(6) is appropriate only where a complaint is so deficient that the plaintiff "could not recover under any reasonably conceivable set of circumstances susceptible of proof."[133]

## 2.  The conflicts of laws analysis

Before addressing the substance of Axis and Greenwich's Motions, the Court must first address which state's law applies. Greenwich and Axis argue Tennessee law applies to this action, as Varsity is headquartered in Tennessee, and the Greenwich and Axis insurance policies were delivered to Varsity's offices in Tennessee.[134]  Varsity argues Delaware law applies because there is no outcome determinative conflict of laws.[135]

---

[131] *Henry v. Middletown Farmers Mkt., LLC*, 2014 WL 4426311, at *2 (Del. Super. Sept. 8, 2014) (quoting *Klein v. Sunbeam Corp.*, 94 A.2d 385, 391 (Del. 1952)).
[132] *Agahi v. Kelly,* 2024 WL 1134048, at *7 (Del. Super. Mar. 15, 2024) (first citing Super. Ct. Civ. R. 12(b)(6); and then citing *Tilton v. Stila Styles, LLC*, 2023 WL 6134638, at *3 (Del. Super. Sept. 19, 2023) (citation omitted)).
[133] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 536 (Del. 2011) (citing *Savor*, 812 A.2d at 896-97).
[134] GA MTD at 6-7.
[135] D.I. 127, Pls.' Br. in Opp'n to GA MTD ("GA MTD Opp'n") at 8-10.

In conducting a conflicts of law analysis, Delaware courts first determine if there is an actual conflict between the laws of two or more relevant jurisdictions.[136] An actual conflict exists when the outcome of the case changes depending upon which jurisdiction's laws are applied.[137] If the outcome of an issue is the same under two jurisdictions' laws, there is a "false conflict," and a Delaware court should not conduct a choice of law analysis.[138] If an actual conflict between the laws of multiple jurisdictions exists, Delaware courts determine which jurisdiction has the most significant relationship to the case, and apply that jurisdiction's laws.[139]

The Court does not currently find any outcome determinative conflict between the laws of Tennessee and Delaware. Thus, Delaware law applies to this decision. To demonstrate the lack of any outcome determinative conflict, the Court will discuss both Delaware and Tennessee law in connection with each of the remaining defendants' arguments.

---

[136] *Buhl Bldg., L.L.C. v. Commonwealth Land Title Ins. Co.*, 2019 WL 3916615, at *3 (Del. Super. Aug. 19, 2019) (citing *Bell Helicopter Textron, Inc. v. Arteaga*, 113 A.3d 1045, 1050 (Del. 2015)).
[137] *Deuley v. DynCorp Int'l, Inc.*, 8 A.3d 1156, 1161 (Del. 2010) (first citing *Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006); and then citing *Lagrone v. Am. Mortell Corp.*, 2008 WL 4152677, at *5 (Del. Super. Sept. 4, 2008) (There is a "false conflict" of laws when the outcome is the same under the laws of each relevant jurisdiction. In that case, a choice-of-law analysis is unnecessary)).
[138] *Id*.
[139] *Buhl*, 2019 WL 3916615 at *3.

### 3. Greenwich's argument that Varsity breached a condition precedent to coverage fails.

Greenwich argues Varsity breached a condition precedent to coverage by failing to secure Greenwich's consent before entering into the Conditional Settlement.[140] Greenwich asserts that Varsity's Second, Third, and Fourth Causes of Action should therefore be dismissed.[141]

Greenwich's policies provide that an insured must obtain the Insurer's consent prior to entering into any settlement:

> d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense without our consent.[142]

Both Delaware and Tennessee law require adherence to conditions precedent in the insurance context.[143] Adherence to conditions precedent can be pled by "[averring] generally that all conditions precedent have been performed or have occurred."[144] In

---

[140] GA MTD at 21.

[141] *Id.* at 23. Axis waived consent and does not join this argument. GA MTD at 1 n. 1, 3 n.3.

[142] GA MTD at 21 (citing *Id.* Ex. 2 at 86).

[143] *See Am. Guarantee & Liab. Ins. Co. v. Norfolk S. Ry. Co.*, 278 F. Supp. 3d 1025, 1051 (E.D. Tenn. 2017) (first citing *Anderson v. Dudley L. Moore Ins. Co.*, 640 S.W.2d 556, 560 (Tenn. Ct. App. 1982); and then citing *State Auto. Ins. Co. v. Lashlee-Rich, Inc.*, 1997 WL 781896, at *4 (Tenn. Ct. App. Dec. 22, 1997) ("When an insured makes a payment or incurs an expense as a result of an occurrence, the insured cannot subsequently recover such costs if made without the insurer's knowledge or consent.")); *Rhone-Poulenc Basic Chemicals Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1198 (Del. 1992) (citing *Casson v. Nationwide Ins. Co.*, 455 A.2d 361, 365 (1982) ("In order for an insured to establish the contractual liability of an insurer for breach of an insurance contract, the insured must show that he has complied with all conditions precedent to the insurer's performance.")).

[144] Super. Ct. Civ. R. 9(c); *See also* Tenn. R. Civ. P. 9.03 (same).

both states, consent-to-settle provisions in insurance contracts can be waived by the insurer when the insurer rejects coverage.[145]

Greenwich argues Varsity admitted to breaching the consent-to-settle provisions.[146] Varsity pleads it "has complied with all terms, conditions and prerequisites to coverage under the Primary CGL Policies or are excused from doing so based on the Primary CGL Insurers' coverage declinations and/or other conduct."[147] This general averment satisfies the pleading requirements of Rule 9(c). At this stage, it would be inappropriate for this Court to ignore Varsity's general averment and make a factual determination on whether the alleged condition precedent was waived, satisfied, or breached.[148] Varsity's Second, Third, and Fourth Causes of Action will not be dismissed for failure to satisfy a condition precedent to coverage.

---

[145] *See Allpress v. Lawyers Title Ins. Corp.*, 405 S.W.2d 572, 574 (Tenn. 1966) ("We find nothing in the title policy which says that, once the insurance company has been notified of the claim against the insured, and refuses to defend or settle such claim, that the appellant insured cannot settle the claim."); *Shook v. Hertz Corp.*, 349 A.2d 874, 877 (Del. Super. 1975) (quoting *Calhoun v. State Farm Mut. Auto. Ins. Co.*, 62 Cal. Rptr. 177, 181 (Cal. Ct. App. 1967) ("An insurer may not thus repudiate a policy, deny all liability thereon, and at the same time be permitted to stand on the failure to comply with a provision inserted in the policy for its benefit[.]")).
[146] GA MTD at 21.
[147] Sec. Am. Compl. ¶ 435.
[148] *See Supernus Pharms., Inc. v. Reich Consulting Gp., Inc.*, 2021 WL 5046713, at *5 n.55 (Del. Ch. Oct. 29, 2021) (citations omitted) ("it would be an error . . . to set aside [the plaintiff's] general averment that it performed all conditions precedent at the pleading stage.").

## 4. Varsity's breach of contract claim is adequately pled.

Greenwich and Axis argue Varsity's Second Cause of Action (Breach of the Duty to Indemnify) fails to state a claim because it is duplicative of the Third Cause of Action (Bad Faith Failure to Settle).[149] Greenwich and Axis argue "the crux of Varsity's claim for breach of contract is that its insurers refused to provide coverage for Varsity and failed to fund its proposed Conditional Settlement."[150] Thus, "the only specific breach Varsity alleges is the implied covenant of good faith and fair dealing."[151]

In both Delaware and Tennessee, a valid claim for breach of contract must allege: "(1) the existence of a contract; (2) the breach of an obligation imposed by the contract; and (3) damages that the plaintiff suffered as a result of the breach."[152] Varsity's Second Amended Complaint easily surpasses the hurdles for stating a claim. Varsity alleges "[e]ach of the Primary CGL Insurers refused to accept its legal obligations to provide coverage for Varsity in response to some or all of the Underlying Actions and Claims[,]" and their "failure to indemnify Varsity fully for

---

[149] GA MTD at 12.

[150] *Id.*

[151] *Id.*

[152] *Agahi*, 2024 WL 1134048 at *8 (quoting *Morris v. Delmarva Real Est. Hldgs., LLC*, 2024 WL 413512, at *5 (Del. Ch. Feb. 5, 2024)); *See also Leedy v. Hickory Ridge, LLC*, 663 S.W.3d 537, 548 (Tenn. Ct. App. 2022) (quoting *ARC LifeMed, Inc. v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App.) ("The essential elements of any breach of contract claim include (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract.")).

a settlement of the Underlying Actions and Claims constitutes a breach of the Primary CGL Policies."[153] Varsity further alleges that "Varsity has incurred and will continue to incur damages in the form of costs to pay settlements and/or judgments in the Underlying Actions and Claims for which the Primary CGL Insurers are responsible pursuant to the terms of their respective Primary CGL policies that they issued to Varsity."[154] Pleading a specific amount of damages is unnecessary where, as here, it is "reasonable to infer" the plaintiff suffered damages.[155] Thus, Varsity meets the minimum pleading standards pursuant to Superior Court Civil Rule 12(b)(6).

The Second Cause of Action is not duplicative with the Third Cause of Action, which alleges a violation of the implied covenant of good faith and fair dealing. As detailed below, the implied covenant and breach of contract claims have distinct elements, and Varsity states a claim for both independently.

5. **The bad faith failure to settle claim is sufficiently pled under Delaware and Tennessee law.**

Greenwich and Axis argue that Varsity's Third Cause of Action (Bad Faith Failure to Settle against the Primary CGL Insurers (including Greenwich and Axis))

---

[153] *Id.* ¶¶ 436-37.
[154] *Id.* ¶ 433.
[155] *Agahi,* 2024 WL 1134048 at *8.

fails to state a claim for which relief can be granted.[156] Both Delaware and Tennessee law recognize bad faith failure to settle claims as a subset of the implied covenant.[157]

Greenwich and Axis argue the damages allegations for the Third Cause of Action are insufficient,[158] and that the Second Amended Complaint fails to identify Greenwich and Axis' particular misconduct.[159] Varsity sufficiently outlines how it

---

[156] GA MTD at 10-21; D.I. 164, Defs. Greenwich and Axis' Reply in Further Supp. of GA MTD ("GA MTDR") at 9-17.

[157] *Connelly v. State Farm Mut. Auto. Ins. Co.*, 135 A.3d 1271, 1274 (Del. 2016) ("A duty of good faith and fair dealing is implied in every contract. In the context of an insurance policy, the implied covenant has historically included a duty to 'settle [claims] within policy limits where recovery in excess of those limits is substantially likely.'") (citations omitted) (alteration in original); *Johnson v. Tenn. Farmers Mut. Ins. Co.*, 205 S.W.3d 365, 370 (Tenn. 2006) ("'It is well established that an insurer having exclusive control over the investigation and settlement of a claim may be held liable to its insured for an amount in excess of its policy limits if as a result of bad faith it fails to effect a settlement within the policy limits'…[t]o discharge its duty to act in good faith, an insurer must exercise ordinary care and diligence in investigating the claim and the extent of damage for which the insured may be liable.") (citations omitted).

   Greenwich and Axis also argue that Tennessee law does not recognize violations of the implied covenant of good faith and fair dealing as a standalone cause of action. GA MTD at 10. Tennessee allows claims for breach of the implied covenant when the plaintiff first satisfies the elements for breach of contract. *See*, *e.g.*, *Costello v. Mountain Laurel Assurance Co.*, 670 F. Supp. 3d 603, 617 (E.D. Tenn. 2023) ("Here, the Court has already determined…that plaintiff has pled factual content to state a plausible claim for breach of contract. As a result, she can also state a claim for breach of the covenant of good faith and fair dealing."); *Davidson v. Arlington Cmty. Sch. Bd. of Educ.*, 847 F. App'x 304, 310 (6th Cir. 2021) (citing *ARC LifeMed*, 183 S.W.3d at 26 ("though she invokes the duty of good faith and fair dealing, [the plaintiff] must still satisfy the elements of a breach-of-contract claim")). Varsity adequately pleads a breach of contract claim; thus, Varsity can plead a violation of the implied covenant of good faith and fair dealing claim under Tennessee law.

[158] GA MTD at 14.

[159] GA MTD at 2, 19. Greenwich and Axis also contend that Varsity's Bad Faith Failure to Settle Claim should be dismissed because Varsity has not suffered a final judgment in excess of the applicable policy limits. GA MTD at 14 n. 8. The Supreme Court of Delaware in *Connelly v. State Farm* explained that for an insured to prevail in a bad faith failure to settle action, the insured must allege they have suffered a final, non-appealable judgment in excess of the policy limits. *Connelly* 135 A.3d at 1272. In doing so, the Supreme Court adopted the majority rule and favorably cited a treatise, Allan D. Windt, Insurance Claims & Disputes § 9:2 (6th ed. 2013). *Id*. at 1276 n. 17. As that treatise explains, when an insured enters into a settlement in excess of the policy limits – after an earlier failure to settle caused by the insurer – the insured should still be able to bring a bad

35

has been damaged by the Insurers' alleged misconduct. The Third Cause of Action specifies that "Varsity has been injured and will continue to be injured,"[160] and the remainder of the Second Amended Complaint explains that Varsity will be forced to pay for the underlying judgments and settlements on its own in the absence of any insurance coverage. Assuming Varsity's factual allegations are true, as this Court must do in resolving a 12(b)(6) motion to dismiss, the Court can infer that the alleged bad faith conduct by the Primary CGL Insurers (including Greenwich and Axis), jeopardized Varsity's settlement, and left Varsity without insurance coverage for the Underlying Lawsuits, thereby injuring Varsity.[161]

---

faith failure to settle claim. Allan D. Windt, Insurance Claims & Disputes § 5:17, Westlaw (database updated Mar. 2024) (citations omitted). If the insurer needed to suffer an excess judgment rather than an excess settlement, they would be penalized for "acting prudently," and settling the case on their own. *Id*. Alleging an "excess settlement" is sufficient for a bad faith failure to settle claim under Delaware law.

Varsity filed suit not only against the Primary CGL Insurers, but also against the Excess CGL Insurers. By filing suit against all the Insurers, Varsity implies that the settlement amount, which has not been explicitly provided, is likely to exceed the policy limits of the Primary CGL Insurers, including Greenwich and Axis. Without that settlement figure, the Court cannot make a factual determination that Varsity's settlement amount fails to exceed the policy limits of the Primary CGL Insurers. Cause of Action III cannot be dismissed for failure to plead an excess judgment.

Tennessee law does not address the excess judgment vs. settlement issue. In a Tennessee bad faith failure to settle claim, an insurer "may be held liable to its insured for an amount in excess of its policy limits if as a result of bad faith it fails to effect a settlement within the policy limits." *Johnson*, 205 S.W.3d at 370 (quoting *State Auto. Ins. Co. of Columbus, Ohio v. Rowland*, 427 S.W.2d 30, 33 (1968)). This Court finds no Tennessee caselaw – and Greenwich and Axis fail to provide any – which precludes Varsity from alleging bad faith failure to settle against Insurers based on an underlying excess settlement.

[160] Sec. Am. Compl. ¶ 450.

[161] *See Agahi,* 2024 WL 1134048 at *8 (noting that pleading a specific amount of damages is unnecessary where the court can "infer [the plaintiff] suffered damages" from the allegations in the complaint).

Greenwich and Axis further contend the Breach of Contract and Bad Faith Failure to Settle Claims are duplicative.[162] Varsity's Breach of Contract claim and Bad Faith Failure to Settle claims are not duplicative, as the Breach of Contract claim alleges that Insurers failed to indemnify Varsity for the settlement agreement, while the Bad Faith Failure to Settle claim alleges bad faith conduct during settlement *negotiations*.[163]

Finally, Greenwich and Axis argue that, for a Tennessee bad faith failure to settle claim, Varsity must allege that the Insurers had exclusive control over the settlement negotiations.[164] Greenwich and Axis contend that the Insurers' lack of exclusive control over the settlement negotiations bars Varsity's bad faith failure to settle claim.[165]

The Supreme Court of Tennessee has declared that, for relief to be granted on a bad faith failure to settle claim, the plaintiff must allege that the insurer had "exclusive control over the investigation and settlement of a claim…."[166] Courts applying Tennessee law have found the "exclusive control" requirement is satisfied when an insurer agreed to defend under a reservation of rights.[167] In *For Senior*

---

[162] GA MTD at 23.
[163] Sec. Am. Compl. ¶¶ 432-38, 439-50.
[164] GA MTD at 20.
[165] *Id*.
[166] *Johnson*, 205 S.W.3d at 370 (quoting *Rowland*, 427 S.W.2d at 33).
[167] *See For Senior Help, LLC v. Westchester Fire Ins. Co.*, 515 F. Supp. 3d 787, 804 (M.D. Tenn. 2021) ("The court concludes . . . that the defendant is not entitled to summary judgment on the bad faith failure to settle claim as a matter of law, purely on the basis that it provided a defense subject

*Help, LLC v. Westchester Fire Insurance Co.*, the U.S. District Court for the Middle District of Tennessee held that an insurer who undertook a legal defense of their insured, even a conditional one, had a duty to explore settlement opportunities in good faith.[168]

Delaware law also employs an "exclusive control" standard, but this control is satisfied when the insurer, because of the terms of their insurance policy, has the exclusive right to control the defense of the insured.[169]

Varsity alleges that "[o]nly a few of the Primary CGL Insurers agreed to defend Varsity but then only as to certain of the claims, and with improper conditions placed upon the staffing and hourly rates."[170]  The Second Amended Complaint does not specify whether or not Greenwich and Axis are among the few Insurers who agreed to defend Varsity – meaning Greenwich and Axis could possibly have negotiated, on Varsity's behalf, the settlement of the underlying claims which invoke Greenwich and Axis policies.  This satisfies the control requirements of *For Senior Help* at the motion to dismiss phase.   It is possible, under the facts alleged in the Second Amended Complaint, that Greenwich and Axis had a sufficient level control over the defense of Varsity which would require Greenwich and Axis to exercise

---

to a reservation of rights. By providing a defense, it incurred a duty to negotiate settlement in good faith as an integral part of that defense, and it may be held liable if it failed to do so.").

[168] *Id.*

[169] *See Connelly* 135 A.3d at 1272, 1274-75 (the insurer "had the exclusive right to control defense strategy and settlement").

[170] Sec. Am. Compl. ¶ 421.

good faith in negotiating a settlement, and that Greenwich and Axis then failed to do so.[171]  Under Tennessee law, Varsity provides sufficient facts to support an inference of "exclusive control."

As for Delaware law, Varsity pleads that Greenwich and Axis had not only the right, but the obligation to defend Varsity in the underlying dispute.[172]  Under *Connelly*, this is sufficient.[173]

Under both Tennessee and Delaware law, Varsity's Third Cause of Action survives Greenwich and Axis' Motion to Dismiss.  Any differences in the laws create a "false conflict," and the Court will not conduct a choice of law analysis when the laws of Tennessee and Delaware do not conflict on the issues presented in the Motions to Dismiss.[174]

### 6. Greenwich and Axis' alternative request to stay the bad faith failure to settle claim is denied.

Greenwich and Axis argue Varsity's Third Cause of Action should be stayed pending the resolution of the breach of contract claims.[175]  Delaware courts have

---

[171] The Court also disagrees with Greenwich and Axis that Varsity has admitted to a lack of sufficient control by Insurers.  GA MTD at 20; GA MTDR at 9.  Varsity's Second Amended Complaint alleges that some Insurers defended Varsity in the Underlying Lawsuits, and this defense potentially includes participation in the settlement negotiations.  Sec. Am. Compl. ¶ 421.

[172] *See, e.g.*, Sec. Am. Compl. ¶ 120 ("The 2014-2015 Greenwich Primary CGL Policy also obligates Greenwich to 'defend the insured…'"); Sec. Am. Compl. ¶ 85 ("The 2008-2009 Axis Primary CGL Policy also obligates Axis to 'defend the insured…'").

[173] *Connelly* 135 A.3d at 1272, 1274-75.

[174] *See ACE Am. Ins. Co. v. Rite Aid Corp.*, 270 A.3d 239, 244-245 (Del. 2022) ("a choice of law analysis is unnecessary because [the laws of the two relevant jurisdictions] do not conflict on the insurance coverage issues presented here.").

[175] GA MTD at 26.

discretion to sever and stay claims because of the Court's inherent power to control its docket.[176] In evaluating whether to sever and stay an action, a court will balance "the interests of the plaintiff, [and] the interests of the defendant, all with an eye toward the efficient and fair administration ... of justice."[177] In determining whether to sever and stay a cause of action, "expense and litigation economy predominate."[178]

The Court disagrees with Greenwich and Axis that severing and staying the bad faith failure to settle claim is more efficient than allowing it to proceed. A stay could result in two separate discovery periods for one case, which would unnecessarily extend the life of this action. The Court, therefore, will not sever and stay the bad faith failure to settle claim.

### 7. Varsity's Third Cause of Action will not be dismissed based on facts alleged by the defendants outside of the Complaint.

Greenwich and Axis argue that Varsity's Third Cause of Action should be dismissed because it calls for the disclosure of confidential mediation communications between Varsity, the underlying claimants, and the Insurers.[179]

---

[176] *Lima USA, Inc. v. Mahfouz*, 2021 WL 5774394, at *7 (Del. Super. Aug. 31, 2021) (citing *Solow v. Aspect Res., LLC*, 46 A.3d 1074, 1075 (Del. 2012)).

[177] *Id.* (quoting *Carlton Inv. v. TLC Beatrice Int'l Hldgs., Inc.*, 1996 WL 33167168, at *9 (Del. Ch. June 6, 1996)).

[178] *Id.* (citation omitted).

[179] Arch MTD at 1 n.1; *see generally* GA Joinder. Arch's briefs provide Greenwich and Axis' arguments on this issue. Arch MTD at 26-31; Arch MTDR 13-20. Because the Court dismissed Arch on personal jurisdiction grounds, it will not include Arch when it discusses Greenwich and Axis' position on this issue.

Greenwich and Axis allege Varsity breached the Mediation Confidentiality Agreement and that Varsity has violated District of South Carolina Local Rule 16.08 (C)[180] because the South Carolina Federal Court originally ordered the mediation.[181] Greenwich and Axis argue Varsity breached the Mediation Confidentiality Agreement by disclosing confidential mediation information in its Complaint and will continue to breach the Agreement in pursuing Cause of Action III.[182]

Varsity does not discuss the Mediation Confidentiality Agreement in its pleadings. The Mediation Confidentiality Agreement is not attached as an exhibit to Complaint or the Amended Complaints. District of South Carolina Local Rule 16.08 (C) is also not mentioned in the Complaint. In resolving a motion to dismiss pursuant to Rule 12(b)(6), the Court should look to the complaint as the "universe of facts the trial court may consider[.]"[183]

Nonetheless, documents which are integral to the plaintiff's claim and incorporated by reference into the complaint can be examined without converting

---

[180] "Communications during the mediation conferences shall be confidential. The parties, their attorneys, and other persons present shall maintain the confidentiality of the mediation and shall not rely on, introduce, or attempt to introduce as evidence in any arbitral, judicial, or other proceeding, any event, document, or communication relating in any way to the mediation." Local Civ. Rule 16.08(C) (D.S.C.).

[181] Arch MTD at 27.

[182] *Id.*

[183] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006) (first citing *Malpiede v. Townson*, 780 A.2d 1075, 1082 (Del. 2001); then citing *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 65 (Del. 1995); and then citing *In re Tri-Star Pictures, Inc.*, 634 A.2d 319, 326 (Del. 1993)).

the motion to dismiss into a motion for summary judgment.[184] "The trial court may also take judicial notice of matters that are not subject to reasonable dispute."[185]

The Mediation Confidentiality Agreement is not incorporated by reference into the Complaint. Nor is it integral to Varsity's claims: it is being used by the Greenwich and Axis to shield against Varsity's claims. The Court will not consider the Mediation Confidentiality Agreement in resolving the Motion to Dismiss, and Greenwich and Axis' argument that Varsity's Third Cause of Action should be dismissed because it violates the Mediation Confidentiality Agreement necessarily fails.

As to the District of South Carolina Local Rule requiring confidentiality in mediation over the South Carolina Federal Action, Varsity's complaint alleges that "the South Carolina federal court ordered mediation."[186] The Court also acknowledges that District of South Carolina Local Rule 16.08(C) requires that "[communications] during mediation conferences shall be confidential."[187]

---

[184] *See Sanders v. Devine*, 1997 WL 599539, at *4 (Del. Ch. Sept. 24, 1997) ("[A]n examination of documents outside the pleadings is permitted as long as the documents are integral to the plaintiff's claim.") (citing *Noerr v. Greenwood*, 1997 WL 419633, at *3 (Del. Ch. July 16, 1997)); *In re Lukens Inc. S'holders Litig.*, 757 A.2d 720, 727 (Del. Ch. 1999), *aff'd sub nom. Walker v. Lukens, Inc.*, 757 A.2d 1278 (Del. 2000) (citing *Santa Fe*, 669 A.2d at 69-70) (explaining that "the court may consider, for certain purposes, the content of documents that are integral to or are incorporated by reference into the complaint[.]")).

[185] *Gen. Motors*, 897 A.2d at 169 (citing D.R.E. 201(b)).

[186] Sec. Am. Compl. ¶ 422.

[187] Local Civ. Rule 16.08(C) (D.S.C.). The Court notes its concern that Varsity's pursuit of a Bad Faith claim may result in the admission of mediation-related documents on the record. Discovery on the Bad Faith claim may eventually violate D.S.C. Local Rule 16.08(C) and, at least according to Greenwich and Axis, the Mediation Confidentiality Agreement. To reiterate, the Bad Faith

Even acknowledging the District of South Carolina Local Rule, which requires communications which occurred during the mediation of the South Carolina Federal Action be kept confidential, Greenwich and Axis' Motion to Dismiss fails. The Second Amended Complaint does not specify that Greenwich or Axis are potentially liable for damages incurred by the South Carolina Federal Action, as opposed to the many other underlying claims. The Second Amended Complaint explains that the South Carolina Federal Court ordered mediation, and that Varsity mediated with "all but a few of the claimants," including those unrelated to the South Carolina Federal Action. The Court reviews the Second Amended Complaint "generously," and "in a light most favorable to the plaintiff."[188] As such, the Court accepts the reasonable possibility that Greenwich and Axis have nothing to do with the South Carolina Federal Action, and that the District of South Carolina Local Rule mandating confidentiality in mediating the South Carolina Federal Action does not apply to claims for which Greenwich and Axis may be liable. Greenwich and Axis do not articulate why South Carolina Local Rule 16.08(c) would apply to *all* discussions during settlement negotiations for *all* underlying claims, including those claims which are unrelated to the South Carolina Federal Action. Instead,

---

Failure to Settle claim survives based on the standard of review for a motion to dismiss, even though the Local Rule and Confidentiality Agreement may prevent Varsity from providing sufficient evidence to prove bad faith by the Insurers.

[188] *Henry v. Middletown Farmers Mkt., LLC*, 2014 WL 4426311, at *2 (Del. Super. Ct. Sept. 8, 2014).

Greenwich and Axis rely on the applicability of the Mediation Confidentiality Agreement, which this Court may not consider.[189] Greenwich and Axis' argument that the South Carolina Local Rule mandates dismissal of Varsity's Bad Faith Failure to Settle Cause of Action is therefore unsuccessful.

## 8. Greenwich and Axis' Motion to Strike is denied.

As an alternative to their Motion to Dismiss for Failure to State a Claim, Greenwich and Axis argue that the portions of the Second Amended Complaint which relate to the underlying mediation session should be stricken under Rule 12(f).[190] Greenwich and Axis argue that, because of the mediation's confidentiality, paragraphs 1-5, 422-24, and the entire Third Cause of Action (paragraphs 439-50), should all be stricken from the Second Amended Complaint because those paragraphs discuss underlying mediation, violating mediation confidentiality rules.[191]

---

[189] *See* Local Civ. Rule 1.01 (D.S.C.) ("These Local Civil Rules of practice shall govern the conduct of the United States District Court for the District of South Carolina"); *See also* Arch MTDR at 14 ("the mediation was not exclusively subject to the orders of the U.S. District Court for the District of South Carolina (which had jurisdiction solely over the federal lawsuits filed in South Carolina)").

[190] Arch MTD at 1 n.1. Again, Arch's briefs provide Greenwich and Axis' arguments on this issue. *Id.* at 26; Arch MTDR at 13. Because the Court dismissed Arch on personal jurisdiction grounds, it will not include Arch when it discusses Greenwich and Axis' position on this issue.

[191] Arch MTD at 30-31.

Superior Court Rule 12(f) provides that "the Court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter."[192]

> Motions to strike focus on the form of the pleading and not its substance. These motions generally are disfavored and are "granted sparingly and only when clearly warranted with all doubt being resolved in the nonmoving party's favor." A motion to strike is granted if the challenged averments are: (1) not relevant to an issue in the case; and (2) unduly prejudicial.[193]

Greenwich and Axis provide one Delaware case to support their argument that a motion to strike is an appropriate tool for removing confidential information from a complaint.[194] In *NewYork.com Internet Holdings, Inc.*, the Court of Chancery struck a paragraph of a counterclaim that described "conduct and language" of a party at a mediation.[195] The paragraph stricken from the complaint was irrelevant and prejudicial; the paragraph offered no allegation which supported the counterclaim.[196]

The objected-to paragraphs of Varsity's Second Amended Complaint are relevant to Varsity's Causes of Action. Paragraphs 1-5 are the Preliminary Statement, which summarizes the entire Second Amended Complaint.[197] Paragraphs

---

[192] Super. Ct. Civ. R. 12(f).

[193] *NewYork.com Internet Hldgs., Inc. v. Ent. Benefits Gp., LLC*, 2015 WL 4126653, at *4 (Del. Ch. July 8, 2015) (citing *Salem Church Assocs. v. New Castle Cty.*, 2004 WL 1087341, *2 (Del. Ch. May 6, 2004)).

[194] Arch MTD at 29-30.

[195] *NewYork.com*, 2015 WL 4126653 at *5.

[196] *Id.* at *5 ("[The stricken paragraph] is not reasonably likely to reflect unfavorably on the good name, goodwill, or reputation of the Company").

[197] Sec. Am. Compl. ¶¶ 1-5.

422-424 acknowledge that a mediation occurred, that it resulted in a settlement, and that the Insurers refused to fund that settlement. Those factual allegations form the backbone of Varsity's entire case.[198] Greenwich and Axis provide insufficient Delaware caselaw to support their argument that information contained in a complaint, which is relevant to the claims sought, should nonetheless be stricken because of mediation confidentiality. As to Greenwich and Axis' request that the entire Third Cause of Action be stricken, this appears to be a request for an alternative method of dismissing a Cause of Action which otherwise survives a motion to dismiss for failure to state a claim. Greenwich and Axis provide no Delaware caselaw to support such a dramatic strike.

As mentioned above, motions to strike are granted if "the challenged averments are: (1) not relevant to an issue in the case; *and* (2) unduly prejudicial."[199] The objected-to paragraphs of Varsity's Second Amended Complaint are relevant to Varsity's claims, and a motion to strike is an inappropriate method of dismissing those claims.

Each of Greenwich and Axis' arguments for dismissal under Rule 12(b)(6) fails, so their Motion to Dismiss is accordingly denied.

---

[198] *Id.* ¶¶ 422-24.
[199] *NewYork.com*, 2015 WL 4126653 at *4 (emphasis added) (citing *Salem*, 2004 WL 1087341, at *2).

## V. CONCLUSION

Arch's Motion to Dismiss is GRANTED. PIIC's Motion to Dismiss is GRANTED. Greenwich and Axis' Motion to Dismiss is DENIED. National Union and Lexington's Motion to Dismiss is DENIED, and RSUI's Motion to Dismiss is DENIED accordingly.

**IT IS SO ORDERED.**

*/s/ Meghan A. Adams*

**Meghan A. Adams, Judge**

47